# Skadden, Arps, Slate, Meagher & Flom llp

one manhattan west
new york, ny 10001
———
tel: (212) 735-3000
fax: (212) 735-2000
www.skadden.com

direct dial
212.735.2100
direct fax
917.777.2100
email address
David.Meister@Skadden.com

firm/affiliate offices
———
boston
chicago
houston
los angeles
palo alto
washington, d.c.
wilmington
———
abu dhabi
beijing
brussels
frankfurt
hong kong
london
munich
paris
são paulo
seoul
singapore
tokyo
toronto

March 17, 2025

*Via ECF*

Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street, Room 703
New York, New York 10007

   RE:  <u>*United States v. Cheuk Fung Richard Ho*</u>, 1:25-cr-00003-JAV

Dear Judge Vargas:

  We respectfully submit this letter on behalf of Richard Ho, in opposition to the Government's motion for entry of its proposed protective order, Dkt. No. 17 ("Mot."). While the defense does not oppose a suitable protective order, some features of the Government's proposal are unduly burdensome and unnecessary. We have attached an alternative proposed order consistent with the weight of applicable precedent (Exhibit A), which is based on Your Honor's model order (as the Court presumptively requires) and incorporates portions of a similar order recently issued by Judge Garnett in a trade-secret case, as well as undisputed aspects of the Government's proposal.

  The Government's proposed order is an outlier. Unlike in nearly every other trade-secret prosecution we could find in the past ten years, here the Government would have a very large volume of discovery materials, including the most important evidence in the case, locked away in a room in an FBI facility, where, stripped of electronics and subject to searches and visual monitoring, defense counsel, Mr. Ho, and any defense experts would decamp to review them on a Government computer. The weight of precedent does not require such an onerous process, which threatens to set in motion a very costly and burdensome review and severely hobble our ability to prepare an effective defense.

  Moreover, such measures are unnecessary to ensure that the information is protected. The Government claims that this onerous process is absolutely needed to

protect the owner of (some of) the information, Headlands Tech Organization LLC,[1] but the Government's restrictions go far beyond anything that Headlands *itself* agreed to in a protective order that was entered, on consent, by an Illinois court, in the long-running civil trade-secret litigation that Headlands brought against Mr. Ho on claims that mirror the allegations in the indictment.

The defense supports strict confidentiality and regrets that we were unable to come to an agreement with the Government on the protections required to maintain it. We respectfully urge the Court to enter our alternative proposed order, which contains a number of the provisions proffered by Government while permitting the defense to review any properly designated materials on three non-internet-connected computers that will be kept secure at Skadden's offices and will be purged and reformatted at the conclusion of this action to ensure that no copies of the materials remain.

**I.   Factual Background**

A.  *The Related Civil Litigation*

Mr. Ho, who has a computer-science degree from the University of Cambridge in the U.K., is a long-time algorithmic coder and trader who has written computer code for trading in the financial markets for more than a decade, at times for his own company and at times for other firms. In 2019, he joined Headlands, where he wrote algorithmic trading code. In 2021, he left Headlands and started his own company, One R Squared ("ORS," which is "Firm-2" in the indictment).

The precursor to the Government's criminal charge is the June 2023 civil suit that Headlands brought against Mr. Ho, ORS, and one of Mr. Ho's then-colleagues. Just as the Government alleges here (and indeed some of the civil and criminal allegations closely match), Headlands claimed in its lawsuit that Mr. Ho stole certain parts of Headlands's code that he had access to when he was writing code for Headlands. We presume that, having failed thus far to achieve the success it sought in the civil forum, Headlands referred its claims to the Government for prosecution.

In the civil case, a dispute arose as to whether Headlands was inappropriately in possession of ORS's code and other confidential information, which Headlands had obtained from one or more former ORS employees. All parties then agreed to a protective order, entered by the Illinois court, which remains in effect and contemplates both sides "possess[ing], receiv[ing], or obtain[ing] Confidential Information or Trade Secrets belonging to another Party." *Headlands Tech Org. v. Ho*,

---

[1] The Government refers to Headlands as "Firm-1," the pseudonym used in the indictment. But it is appropriate to use the proper name Headlands here, because the firm itself disclosed its involvement by suing Mr. Ho in 2023 in the civil case that underpins this criminal action. *See Headlands Tech Org. et al. v. Ho et al.*, No. 2023 CH 05586 (Ill. Cir. Ct. Cook Cty.).

No. 2023 CH 05586 (Ill. Cir. Ct. Cook Cty. Feb. 9, 2024). Headlands did not contend that the order was insufficient to protect its information once civil discovery starts.

In September 2023, Mr. Ho made a motion to dismiss the civil complaint on a number of grounds, which the court granted with leave to amend. In May 2024, Headlands filed an amended complaint, which Mr. Ho again moved to dismiss. Before the court ruled on the motion, Mr. Ho was indicted in this matter. On January 31, 2025—the day the court had been scheduled to rule on the motion to dismiss the amended complaint—the Government moved to intervene in and stay the civil case. Mr. Ho did not oppose the stay but requested that the court rule on the pending motion to dismiss. Headlands consented to the stay and opposed Mr. Ho's request for a ruling on the motion to dismiss. On February 5, the court stayed the action entirely without rendering a decision on Mr. Ho's motion.

B. *The Government's Proposals*

The Government's view as to the necessary level of protection here has evolved in a way that seems to have nothing to do with the facts.

On January 26, 2025, the Government sent the defense a proposed protective order that would *not* have confined the defense's review of any purported trade-secret materials to an FBI facility. We objected to the attorneys'-eyes-only ("AEO") restriction in that proposal because it would have precluded us from even discussing with Mr. Ho some of the most significant pieces of evidence in the case before their introduction at trial, which would infringe on Mr. Ho's Sixth Amendment rights to participate in his defense.[2] We also objected to certain provisions that intruded on our potential engagement with any consulting experts. On February 11, the Government sent us a revision that addressed these objections and improved on the prior version by at least allowing us and Mr. Ho to review designated "Trade Secret Material" maintained at "counsel's offices," on "nonpublic computer networks, servers, and databases," and providing for *ex parte* review by the Court of any proposed defense experts or consultants for conflicts of interest.

On February 13, however, the Government told us it was abandoning its own proposed framework because it had come across an eight-year-old protective order from another trade-secret case, *United States v. Zhang*, 17 Cr. 560 (S.D.N.Y.), which confined the defense's review of the alleged trade-secret materials to an FBI facility.

---

[2] The Government's proposed protective order continues to include an AEO category of designation, to which we object in principle, but we understand from the Government that it is not currently aware of any materials that it would so designate. *See* Mot. at 5 (AEO category "may be necessary" and is included in proposed order to "preserve flexibility to expeditiously produce discovery without having to first seek a modification"). On that understanding, to the extent that the Government does designate any materials as AEO, we reserve the right to seek de-designation or other relief as may be appropriate at that time.

Two weeks later, the Government sent us a new proposed protective order that adopted the *Zhang* order in that respect and backtracked somewhat on the *ex parte* Court review of experts. When we conferred on that new version, the Government said it anticipated designating as trade-secret material not only Headlands's code and ORS's code in their entirety, but also about 20% of the one million documents and communications that Headlands had provided to the prosecution team—which the Government frames as just a "narrow" and "small subset." Mot. at 5, 7. The Government explained that Headlands and its counsel (Orrick, Herrington & Sutcliffe LLP) were in the process of reviewing the million documents for designation as purported trade-secret material, and that the Government would take Headlands's input—which is perversely incentivized by their civil claims that the information constitutes trade secrets—in deciding which documents to so designate.

When we sought to understand the basis for the Government's conclusion that the materials would not be secure at Skadden's offices, where we maintain large volumes of highly confidential information and adhere to strict information-security processes, the Government explained that any introduction of materials to internet-capable computer systems increases the risk of leakage, and that housing the materials at an FBI facility would decrease the likelihood of inadvertent disclosure. The Government could not explain why Skadden's offices and systems raise such a concern when Orrick's do not.

C. *Discovery to Date*

The Government has produced roughly 42,000 documents to us in four productions, including one delivery just before and two in the days after filing its motion. The Government represents that this is "nearly all" of the discovery in its possession other than the two codes and the million documents from Headlands. Mot. at 5 n.1.

The Government has not yet provided us with any information from Mr. Ho's devices that were seized on January 8 in California. We understand that the devices arrived in New York on January 24.

On February 26, we sent the Government a letter requesting discovery and particulars as required by the applicable rules and the Government's constitutional obligations. To date, the Government has not responded.

**II. Argument**

A. *Applicable Precedent Weighs Strongly Against the Government's Position*

Pursuant to 18 U.S.C. § 1835, courts must enter protective orders in civil and criminal trade-secret cases "as may be necessary and appropriate to preserve the confidentiality of trade secrets."

In support of its proposed order, the Government points primarily to *United States v. Zhang*, where the court entered a protective order similar to the one the Government now proposes. Mot. at 7. The Government also cites protective orders from three other cases, but none supports its position: two were entered on consent (*United States v. Sinovel Wind Grp.* and *United States v. Agrawal*; *see* Mot. at 7), and the third, unopposed, was later amended to permit defense counsel to keep materials at her offices (*United States v. Liu*; *see* 16 Cr. 79, Dkt. No. 19 (E.D. Wis. Feb. 28, 2017) ("defendant's attorney may keep and review the copy of the disc marked 'Liu Notebooks' and 'Rockwell Trade Secrets,' at her office")).

The details of *Zhang* contradict the Government's claim that its proposal here "is the only way to adequately ensure that [Headlands's] trade secret data is not lost, stolen, or otherwise distributed." Mot. at 6. In *Zhang*, the Government told the court it was seeking to confine the materials to an FBI facility because defense counsel "insisted that [their] expert be permitted to [put the data on] his own [internet-connected] equipment," and the expert refused to commit to "purg[ing] the Proprietary Material from his devices [afterward] through a complete reformatting—the only reliable means to ensure that the trade secret data does not remain in the devices." Gov't Mot., *Zhang*, 17 Cr. 560, Dkt. No. 54, at 4, 8 (S.D.N.Y. Feb. 2, 2018); *see also* Gov't Reply, Dkt. No. 73, at 1 (Mar. 10, 2018) (expert's "Internet-connected devices" presented "a real risk" of "inadvertent disclosure"). The Government there argued that the defense's "fail[ure] to address these issues" showed that confining the review to an FBI facility was "the best way" forward. *Id.*, Dkt. No. 73, at 2. As discussed below, our proposal addresses precisely those concerns, rendering *Zhang* inapplicable.

Moreover, *Zhang* is an outlier. *Zhang* is one of just two criminal trade-secret cases we have identified in the past ten years, in any federal district, where a court has confined the defense's review of purported trade-secret materials to a Government facility over the defense's opposition. The other, *United States v. Gong*, involved trade secrets relating to military weapons systems, thus implicating national security. *See* 24 Cr. 127, Dkt. No. 36 (C.D. Cal. May 8, 2024). Of the 19 other protective orders we have identified in trade-secret prosecutions in the last ten years, only one other—again on consent—confined the defense's review of alleged trade-secret materials to a Government facility. *See United States v. You*, 19 Cr. 14, Dkt. No. 29 (E.D. Tenn. Apr. 24, 2019). The rest all provided for production of such materials to defense counsel for review at their offices.[3]

---

[3] *See United States v. Ding*, 24 Cr. 141, Dkt. No. 13 (N.D. Cal. Mar. 27, 2024); *United States v. Hytera Commc'n Corp.*, 20 Cr. 688, Dkt. No. 93 (N.D. Ill. Feb. 28, 2023); *United States v. Gao*, 20 Cr. 527, Dkt. No. 24 (S.D. Tex. Jan. 21, 2021); *United States v. Xiang*, 19 Cr. 980, Dkt. No. 57 (E.D. Mo. May 7, 2020); *United States v. Xue*, 18 Cr. 122, Dkt. No. 19 (E.D. Pa. Jan. 29, 2020); *United States v. Zhou*, 19 Cr. 163, Dkt. No. 75 (S.D. Ohio Jan. 3, 2020); *United States v. United Microelectronics Corp.*, 18 Cr. 465, Dkt. No. 79 (N.D. Cal. Nov. 1, 2019); *United States v. Zheng*, 19 Cr. 156, Dkt. No. 43 (N.D.N.Y. July 30, 2019); *United States v. Huawei Tech. Co.*, 18 Cr. 457, Dkt. No. 57 (E.D.N.Y. June 10, 2019); *United States v. Huawei Device Co.*, 19 Cr. 10, Dkt. No. 48 (W.D. Wash.

B. *The Defense's Alternative Proposal Appropriately Balances Any Concerns*

The Government emphasizes "two compelling interests" driving Section 1835 but fails to connect the dots to the order it seeks. *See* Mot. at 4. First, as to the need to maintain confidentiality to preserve value, that interest is amply served—just as it is in the large majority of trade-secret cases—by a protective order that does not impose the burdens that the Government proposes, along the lines of the Court's model order and other precedent discussed below. Indeed, the fact that Headlands itself agreed to a far less restrictive order in its own lawsuit—an order that is consistent with our proposal—undermines the Government's argument that the Court need now shut away all of Headlands's aged code, and all of Mr. Ho's company's code along with it, on the theory that nothing short of that can adequately protect Headlands's interests.[4]

Second, as to potentially deterring victims from coming forward, the notion that Headlands and other companies like it "would be discouraged from cooperating" with the Government if the Court does not confine the materials to an FBI facility is belied by Headlands's conduct here. Despite nearly 20 orders in the past ten years containing no such restriction, Headlands showed zero reluctance in suing Mr. Ho (and agreeing to a less restrictive protective order there) and then presumably reporting the matter to the Government when it had failed to achieve success in its civil case.

Our proposed protective order (Exhibit A)—which is based on the Court's model order and incorporates portions of a similar order recently issued by Judge Garnett in a civil trade-secret case, as well as undisputed features of the Government's proposed order (see Exhibit B for an explanatory blackline of the Court's model order, and Exhibit C for Judge Garnett's order)—would prevent undue prejudice to Mr. Ho in the preparation of his defense, while addressing the specific concerns that warranted the outcome in *Zhang* and the "compelling interests" of Section 1835. We highlight

---

May 10, 2019); *United States v. Xu*, 18 Cr. 43, Dkt. No. 25 (S.D. Ohio Nov. 14, 2018); *United States v. Zhang*, 18 Cr. 312, Dkt. No. 12 (N.D. Cal. Sept. 11, 2018); *United States v. Baratov*, 17 Cr. 103, Dkt. No. 16 (N.D. Cal. Aug. 29, 2017); *United States v. Shi*, 17 Cr. 110, Dkt. No. 52 (D.D.C. July 13, 2017); *United States v. Sparks*, 16 Cr. 198, Dkt. No. 40 (D. Conn. Dec. 19, 2016); *United States v. Xu*, 16 Cr. 10, Dkt. No. 6 (S.D.N.Y. Feb. 1, 2016); *United States v. Rukavina*, 15 Cr. 110, Dkt. No. 25 (W.D. Pa. May 26, 2015); *United States v. Shaoming*, 13 Cr. 147, Dkt. No. 359 (S.D. Iowa May 19, 2015).

4   The Government has not identified which materials it claims were trade secrets during the period charged in the indictment, though we have asked in writing for those particulars. Regardless, we assume here for the sake of argument that the information the Government seeks to protect is currently a "trade secret," as defined in 18 U.S.C. § 1839. We do note, however, that even if the four-year-old Headlands code contained trade secrets at the time of its creation, there is ample reason to doubt—and zero basis proffered by the Government to support the assertion—that any part of the Headlands code, much less all of it, remains a trade secret *today*. Any purported trade secrets in this context are far from everlasting; their value decays with time. The financial markets are ever changing, and code has to be changed, and tested, and changed again to keep up. In other words, algorithmic trading code is not static like the secret recipe for Coca-Cola; rather, like an open can of Coke, it quickly goes stale.

here the proposed provisions that would seem more than adequate to "'preserve the confidential nature of the information,'" Mot. at 4, and ensure that it is "not lost, stolen, or otherwise distributed," *id.* at 6:

- The materials will be produced to defense counsel on portable storage drives, which will be loaded to three non-internet-connected computers at Skadden's offices in New York and Los Angeles. The drives and computers will remain there in secure locations.

- No copies may be removed from the computers, and any written or printed excerpts that are needed for use in or preparation for proceedings, filings, or analysis will be secured and promptly destroyed when no longer needed.

- No defense expert or consultant will review the materials without prior *ex parte* review for potential conflicts of interest.

- At the conclusion of the matter, the three computers and the portable storage drives will be purged and reformatted.

**III. Conclusion**

We respectfully request that the Court enter the attached proposed protective order (Exhibit A).

Respectfully submitted,

/s/ David Meister
David Meister
Daniel Merzel
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-2100

*Attorneys for Cheuk Fung Richard Ho*