## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

CHEUK FUNG RICHARD HO,

Defendant.

**ORAL ARGUMENT REQUESTED**

Case No. 25 Cr. 3

Hon. Jeannette A. Vargas

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS THE INDICTMENT AND FOR A BILL OF PARTICULARS

David Meister
Daniel Merzel
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000

*Counsel for Cheuk Fung Richard Ho*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

I.      PRELIMINARY STATEMENT ................................................................................1

II.     RELEVANT BACKGROUND....................................................................................2

        A.    Summary of Relevant Portions of the Indictment ................................................2

        B.    The Government's Non-Exhaustive List of "Stolen Trade Secrets" ......................3

III.    APPLICABLE LAW ...................................................................................................4

        A.    Lack of Specificity..............................................................................................4

        B.    Bill of Particulars ..............................................................................................5

IV.     ARGUMENT ..............................................................................................................6

V.      CONCLUSION .........................................................................................................11

AFFIDAVIT PURSUANT TO L. CRIM. R. 16.1.........................................................................i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Russell v. United States*, 369 U.S. 749 (1962) ....................................................... 5, 6, 10

*Stirone v. United States*, 361 U.S. 212 (1960) ............................................................. 5

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ............................................. 6

*United States v. Case*, 2007 WL 1746399 (S.D. Miss. June 15, 2007) ............................ 7, 8, 10

*United States v. Fujian Jinhua Integrated Circuit Co.*, No. 3:18-cr-00465-MMC,
    Dkt. No. 188 (N.D. Cal. June 23, 2021) .................................................................. 9

*United States v. Liew*, 2013 WL 2605126 (N.D. Cal. June 11, 2013) ............................... 8, 9

*United States v. Persico*, 621 F. Supp. 842 (S.D.N.Y. 1985) ........................................... 6

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000) ..................................................... 5, 6

*United States v. Seeger*, 303 F.2d 478 (2d Cir. 1962) ................................................... 6

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999) ..................................................... 5

**Rules**

Fed. R. Crim. P. 7(c) ......................................................................................... 4

Fed. R. Crim. P. 7(f) .......................................................................................... 5

iii

Richard Ho respectfully submits this memorandum of law in support of his motion to dismiss the Indictment (Dkt. No. 3, "Indict.") and, in the alternative, for a bill of particulars specifying the "Stolen Trade Secrets," *see* Indict. ¶¶ 2, 18.

## I.   PRELIMINARY STATEMENT

The Indictment charges Mr. Ho with attempted and completed theft of trade secrets from his former employer, Headlands, in violation of 18 U.S.C. § 1832(a)(1)–(4). That what was stolen are trade secrets (as defined by statute) is an element of the offense. Yet the Indictment does not specify the trade secrets that Mr. Ho is alleged to have stolen. The Indictment tells us merely that the "Stolen Trade Secrets consist of portions" or "numerous components" of Headlands' "Source Code," and that they "included, among other things, some of the very building blocks of [Headlands'] Source Code, known as 'Atoms,' as well as some of its predictive formulas, known as 'Alphas.'" Indict. ¶¶ 2, 18. Nowhere does the Indictment specify, in any way, which "portions" or "components," which "Atoms," which "Alphas," or which "other things" are alleged to be the "Stolen Trade Secrets."

This failure to specify the trade secrets leaves the Government free to roam at large and fill in this elemental hole as it wishes, unbounded by which specific trade secrets (if any) were identified for the grand jury that returned the Indictment. The Indictment thus deprives Mr. Ho of his constitutional rights to due process, to be informed of the charges against him, to face such charges only as indicted by a grand jury, and to be positioned to plead the eventual judgment as a bar against double jeopardy.

Proving the point: The Government has sought to fill the hole by producing to the defense a "non-exhaustive" chart identifying portions of Headlands' source code that the Government alleges "constitute[] the 'Stolen Trade Secrets,'" "either individually or taken as a whole." And the Government has reserved the right to "supplement" the chart "if and when [the Government]

identifies additional Headlands' trade secrets that were stolen by the defendant." A non-exhaustive, evolving list of alleged trade secrets, untethered to the grand jury proceedings, is precisely why a vague, open-ended indictment of this kind is impermissible. The grand jury cannot have charged Mr. Ho without knowing which trade secrets are the crux of the offense—nor could it have charged him based on trade secrets that the Government is only now identifying or yet to identify—and the Indictment does nothing to pin this down. The constitutionally required cure is dismissal.

In the alternative (though it would be no cure for this defect), we urge the Court to require the Government to provide a bill of particulars specifying the Indictment's "Stolen Trade Secrets," meaning the purported trade secrets that the grand jury charged. The Court should also require the Government to specify which of those items (if any) are alleged to be trade secrets "individually," whether all of the individual items together constitute a trade secret when "taken as a whole," and, if so, in what manner the "whole" forms a unit (i.e., what it is supposed to be).

## II. RELEVANT BACKGROUND

### A. Summary of Relevant Portions of the Indictment

Mr. Ho is a "research developer and quantitative trader" with years of experience in the field of high-frequency trading, where firms engage in "extremely rapid execution of a high volume of trades" based on "decisions … determined by sophisticated computer programs." Indict. ¶¶ 1, 5, 10. According to the Indictment, Headlands (or "Firm-1"), a quantitative-trading firm, hired Mr. Ho in mid-2019 to develop source code for trading. *Id*. Mr. Ho worked at Headlands for about two years, and the Indictment alleges that, "[w]hile still employed at [Headlands]," he "secretly started his own quantitative trading firm," One R Squared ("ORS," or "Firm-2"), and "stole valuable trade secrets from [Headlands] … for use in developing the source code for [ORS]." *Id*. ¶ 2. The Indictment calls these the "Stolen Trade Secrets," *id.*, but it does not specify what they

are. Rather, it alleges that they "*included*, *among other things*, *some* of the very building blocks of [Headlands'] Source Code, known as 'Atoms,' as well as *some* of its predictive formulas, known as 'Alphas.'" *Id.* (emphases added). ("Atom" and "Alpha" are generic terms that do not specify particular "building blocks" or "predictive formulas.")

Elsewhere, the Indictment describes the "Stolen Trade Secrets" as "numerous components" or "portions" of Headlands' source code—"including" unspecified "Atoms and Alphas"—which "were predominantly written in the C++ and Java programming languages, and which [Mr. Ho] translated into the C++ and Python coding languages while preserving the structure, logic, trading insights, and functionality of [Headlands'] Source Code." *Id.* ¶ 18. According to the Indictment, these unspecified trade secrets "were then deployed on behalf of [ORS]." *Id.*[1]

### B. The Government's Non-Exhaustive List of "Stolen Trade Secrets"

The grand jury returned the Indictment on January 6, 2025. In February, within a month of Mr. Ho's arraignment, the defense requested of the Government, among other things, a bill of particulars specifying "each of the 'Stolen Trade Secrets,' i.e., the particular 'portions' of Headlands' 'Source Code' that allegedly constituted the 'Stolen Trade Secrets' (Indict. ¶¶ 2, 18)." Def. Ltr. to Gov't at *6 (Feb. 26, 2025).

More than two months later, the Government produced "a spreadsheet that provides a non-exhaustive list of Bates numbers of the portions of ORS code that the Government alleges were misappropriated, and the corresponding code from Headlands Technologies." Gov't Ltr. to Def. at *2 (May 9, 2025). We then renewed our request for a bill of particulars, pointing out that a non-

---

[1]   The Indictment also alleges that Mr. Ho copied or stole specific items that are not alleged to be trade secrets, namely (i) "customized and esoteric features of [Headlands'] Code—including coding 'comments'" and file names, one of which related to code "that was publicly available," Indict. ¶¶ 18, 21, (ii) Headlands' "Visualizer," *id.* ¶ 16, and (iii) an "Index" (within a "Directory") containing the "names of numerous unique [Headlands] Atoms," *id.* ¶¶ 4, 19, 23.

exhaustive list by definition cannot satisfy a request for particulars and that the Government had not indicated "whether all or only some of those portions of code—and which ones specifically— are alleged to be trade secrets (i.e., the 'Stolen Trade Secrets' alleged in the Indictment)." Def. Ltr. to Gov't at *1 (June 2, 2025). The Government replied that the spreadsheet "identifies by file path approximately 61 portions of Headlands' code that, either individually or taken as a whole, constitutes the 'Stolen Trade Secrets' described in the Indictment," but maintained that the list is non-exhaustive, representing that "[t]he Government will supplement this spreadsheet if and when it identifies additional Headlands' trade secrets that were stolen by the defendant." Gov't Ltr. to Def. at *1 (June 10, 2025).

The Government's spreadsheet consists of a chart of 61 rows, where each row identifies one or more Headlands files and one or more ORS files. The chart does not indicate which rows the Government contends are trade secrets "individually" and which ones are not themselves trade secrets but only part of a trade secret when the entire list is "taken as a whole." The chart does not indicate what the combined "whole" is supposed to be or what about it is a trade secret. The chart gives no indication of how or when it was created, nor, for example, whether the Government left it to Headlands, the plaintiff in the Illinois civil case, to pick and choose the files that it would claim seem most similar, given that there is no exact duplicate on the chart. As the Government would concede, the Headlands and ORS files identified on the chart are minute portions of the firms' respective source codes.

## III. APPLICABLE LAW

### A. Lack of Specificity

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1), and must both "contain the

elements of the offense intended to be charged" and "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962) (cleaned up).

By extension, an indictment cannot leave the Government "free to roam at large," *id.* at 768, and must "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted). "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone v. United States*, 361 U.S. 212, 218 (1960). For the Government to fill in a factual hole as to an element of the offense would "deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure" and risk that he "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.

In many cases, depending on the offense charged, an indictment that does "little more than … track the language of the statute … and state the time and place (in approximate terms) of the alleged crime" may suffice and leave no such hole—but the Supreme Court "has recognized … that 'where the definition of an offence … includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; [rather,] it must … descend to particulars' … 'with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000) (citations omitted).

## B.  Bill of Particulars

A court "may," in its discretion, "direct the government to file a bill of particulars," Fed. R. Crim. P. 7(f), but "it is a settled rule that a bill of particulars cannot save an invalid indictment."

*Russell*, 369 U.S. at 769–70; *see also United States v. Seeger*, 303 F.2d 478, 484 (2d Cir. 1962) ("A bill of particulars cannot repair a fatal defect in an indictment, … because the defendant has a constitutional right to a fair and accurate accusation by indictment…") (citation omitted); *accord Pirro*, 212 F.3d at 92 ("Because the requirement of a sufficient indictment serves these important [Fifth and Sixth Amendment] purposes, the indictment must be considered as it was actually drawn, not as it might have been drawn.").

But where an indictment is adequately pleaded, the "proper scope and function of a bill of particulars is to furnish facts supplemental to those contained in the indictment," to the extent "necessary to apprise the defendant of the charges against him with sufficient precision so as: (i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).

## IV. ARGUMENT

The Indictment must be dismissed for lack of specificity because it fails to specify the trade secrets that Mr. Ho stands accused of stealing. The Indictment's vague, open-ended references to "portions" and "components" of Headlands' source code, "including" "some" that it characterizes generically as "Atoms" and "Alphas" as well as "other things," leaves the Government free to roam within the massive codebases (perhaps with Headlands' biased guidance), pick and choose supposed similarities at will, slot them into the "Stolen Trade Secrets," and easily change course during trial, without any assurance that the grand jury even considered the purported trade secrets and without fair notice to Mr. Ho. And far from resolving the issue, the Government's "non-exhaustive" chart underscores the issue and the danger it poses.

A comparison of three criminal theft-of-trade-secrets cases—*Case*, *Liew*, and *Fujian Jinhua*—shows why the Indictment must be dismissed and why, in the alternative, a bill of particulars is necessary though we submit insufficient to cure the defect.

In *Case*, the court dismissed two counts of theft of trade secrets because the indictment was "unconstitutionally vague" in its description of the stolen trade secrets. *United States v. Case*, 2007 WL 1746399, at *2 (S.D. Miss. June 15, 2007). The indictment alleged that the defendants had worked at Eaton Corporation before taking new jobs at a smaller competitor, Frisby Aerospace; that they each "possessed Eaton CADs [i.e., computer-assisted designs] while at Frisby"; and that they "utilized the trade secrets that had been stolen from Eaton" when they "participated in the preparation of" Frisby's response "to a request for proposal on a hydraulic gun drive in direct competition with Eaton." Indictment, *Case*, No. 3:06-cr-00210-WHB-FKB, Dkt. No. 1, ¶¶ 15, 21–25 (S.D. Miss. Dec. 20, 2006). The indictment did not allege that the Eaton CADs were trade secrets in their entirety, but rather that they contained trade secrets: "specifically, technology related to the design, specifications, manufacture and sale of military and commercial aviation hydraulics products." *Id.* at Counts 2 and 3.

The defendants in *Case* argued that the indictment was impermissibly vague in this regard, and the court agreed and dismissed the counts. The court found that "the allegation of the existence of a 'trade secret' goes to the 'core criminality' of the statute," necessitating more than just a "generic" description of the alleged trade secrets, and that the indictment's "purported limitation" of the scope of the stolen trade secrets was insufficient, as it was "so broad as to be meaningless." 2007 WL 1746399, at *3–4. As should be the precise worry here, the court also expressed concern about "the fact that the government has purported to reserve for itself the right to designate, at a later date, additional trade secrets which the defendants have allegedly stolen or copied," and noted

that "the matters which were presented to the grand jury and purportedly relied on by the grand jury in returning this indictment should be fixed in time and not subject to addition." *Id.* at *4 n.4.

In *Liew*, by contrast, the indictment survived a motion to dismiss because the charges were structured differently than in *Case* (and here). Unlike in *Case*—where the defendants were charged with completed theft of a single set of trade secrets—the defendants in *Liew* were charged with, among other things, one count of *attempted* theft of "Trade Secret 1" and one count of *completed* theft of "Trade Secret 5." *United States v. Liew*, 2013 WL 2605126, at *3 (N.D. Cal. June 11, 2013). The defendants argued that the indictment was insufficiently specific in defining the two purported trade secrets, but the court declined to dismiss either count, and its reasons are instructive.

On the count of completed theft of trade secrets, the court found that the indictment "clearly identified" the allegedly stolen trade secret, "Trade Secret 5," "namely the Basic Data Document [DuPont Document EM-C-8510-01848, titled '60,000 Metric Tons Per Year Scope/Basic Data'], which [was alleged to] 'contain[] the process and equipment information necessary to design a greenfield …, world-class production scale, integrated chloride-route TiO2 production line.'" *Id.* at *3, 7 (quoting the indictment).

As for the count of attempt, the court did not dismiss but ordered relief. The court observed that the indictment's description of "Trade Secret 1"—i.e., "the DuPont chloride-route process to manufacture TiO2 … includ[ing] ways and means in which proprietary and non-proprietary components were compiled and combined by DuPont to form substantial portions of the TiO2 manufacturing process, and [also including] Trade Secrets 2 through 5"—was "similar to the [unconstitutionally vague] definition of the trade secret in *Case*." *Id.* at *3, 6. But the court noted that the "core criminality" of the inchoate crime of attempt is different, as its focus is on the

defendant's "intent and [] actions, rather than on 'a specific identification of fact.'" *Id.* at *6 (citing *Russell*, 369 U.S. at 764). Although the court declined to dismiss the attempt charge because it was inchoate, it ordered the Government to "provide a bill of particulars that sets forth its theory of what Defendants reasonably believed [Trade Secret 1] to be," including, as relevant, the vaguely alleged "ways and means," the "proprietary and non-proprietary components," and the "compilations and combinations that formed substantial portions." *Id.* at *7–8.

Here, unlike in *Liew*, the Indictment charges Mr. Ho with both attempted and completed theft of a single set of unspecified trade secrets. Accordingly, as described in the Indictment, the allegation of the attempt is part and parcel of the alleged completed offense. The Government made no effort to describe a separate attempt crime. As in *Case*, then, and consistent with the court's reasoning in *Liew*, the Indictment's allegation of the existence of "trade secrets" goes to the "core criminality" of the charge—yet the Indictment fails to specify what they are.

Finally, *Fujian Jinhua* is also instructive. There, the alleged ultimate recipient of the purported trade secrets, the Fujian Jinhua company, was charged with, among other things, conspiracy to commit theft of trade secrets, including "Trade Secret 1," which the indictment described in language that largely tracked the broad, vague formulation in *Liew*. The company did not seek dismissal for lack of specificity but instead moved the court for a bill of particulars, and the court granted the motion in part, ordering the Government to specify the purported trade secrets. *See United States v. Fujian Jinhua Integrated Circuit Co.*, No. 3:18-cr-00465-MMC, Dkt. No. 188, at *1 (N.D. Cal. June 23, 2021) (requiring "a bill of particulars identifying not only any trade secret the government asserts to be a compilation or combination [i.e., a trade secret when taken as a whole] but also identifying (including, if contained in a document, the place therein in which it can be found) any component thereof the government asserts is itself [i.e., individually] a

trade secret on which the government intends to rely to establish Jinhua's guilt"); *see also Fujian Jinhua*, Dkt. No. 194, Hearing Tr. 40:12–15 (Court: "I think that somebody has to know if you are going for the whole thing and only the whole thing or whether you are reserving the right to say certain parts of it themselves are trade secrets. And if so, they ought to know [which].").[2]

We respectfully submit that, following the decisions in *Case* and *Liew*, the Indictment should be dismissed for lack of specificity. The Government's chart of purported trade secrets— "non-exhaustive" and produced to us months after the Indictment was returned, with the lapse in time perhaps suggesting that the selection occurred after the Indictment was obtained— underscores the danger to Mr. Ho's rights, including the risk that he will be tried "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770. Respectfully, the required cure is dismissal.

In the alternative, we urge the Court to order the Government to provide a bill of particulars specifying the Indictment's "Stolen Trade Secrets," i.e., the trade secrets that the grand jury charged. *Accord Case*, 2007 WL 1746399, at *4 n.4 (trade secrets "presented to the grand jury and purportedly relied on by the grand jury in returning this indictment should be fixed in time and not subject to addition").[3] The Court should also require the Government to specify, as in *Fujian Jinhua* and *Liew*, which of the items are alleged to be trade secrets "individually," whether all of the individual items together constitute a trade secret when "taken as a whole," and, if so, in what manner the "whole" forms a unit, so that the defense is not left to guess.

---

[2]    The other charges against Fujian Jinhua included another conspiracy count as well as one count of economic espionage involving receipt and possession of stolen trade secrets under 18 U.S.C. § 1831(a)(3). That substantive count, like the conspiracy counts, was premised not only on Trade Secret 1, but also on Trade Secrets 2–8, each of which was a specific "PDF document" or "Excel spreadsheet." *See* Indictment, *Fujian Jinhua*, No. 3:18-cr-00465-MMC, Dkt. No. 1, ¶¶ 12, 18, 52, 63 (N.D. Cal. Sept. 27, 2018).

[3]    We presume the Government would not, at this stage, contend that it presented purported trade secrets to the grand jury that are not on the 61-row chart that it produced to the defense.

## V.  CONCLUSION

For the foregoing reasons, Mr. Ho respectfully urges the Court to dismiss the Indictment and, in the alternative, requests that the Court order the Government to provide a bill of particulars as described above.

Dated: October 30, 2025
      New York, New York

Respectfully submitted,

 /s/ David Meister
David Meister
Daniel Merzel
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
david.meister@skadden.com
daniel.merzel@skadden.com

*Counsel for Cheuk Fung Richard Ho*

11

## AFFIDAVIT PURSUANT TO L. CRIM. R. 16.1

I, David Meister, counsel for Richard Ho, hereby certify pursuant to L. Crim. R. 16.1 that the defense has conferred with the Government in an effort in good faith to resolve by agreement our request above for a bill of particulars without the intervention of the Court, and that the parties were unable to reach an agreement.

Dated:  October 30, 2025
       New York, New York

                            /s/ David Meister
                            David Meister
                            **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
                            One Manhattan West
                            New York, NY 10001
                            Phone: (212) 735-3000

                            *Counsel for Cheuk Fung Richard Ho*