```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
          -v-                                                     :    25-CR-00003 (JAV)
                                                                  :
CHEUK FUNG RICHARD HO,                                            :    OPINION AND ORDER
                                                                  :
                              Defendant.                          :
------------------------------------------------------------------X
```

JEANNETTE A. VARGAS, United States District Judge:

Pending before the Court is Nonparty-1's Motion to Quash Defendant Cheuk Fung Richard Ho's Rule 17(c) subpoena duces tecum, ECF No. 59-1 ("the Subpoena") served on August 4, 2025. ECF No. 57. For the following reasons, the Motion to Quash is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

**A.    Indictment**

Defendant Ho is charged with theft of trade secrets, in violation of 18 U.S.C. § 1832(a). As set forth in the Indictment, Defendant was previously employed as a research developer and quantitative trader at a global quantitative trading firm ("Nonparty-1"). ECF No. 3 ("Indictment"), ¶ 1. Over the course of many years and at a cost of more than $1 billion, Nonparty-1 developed a proprietary source code (the "Source Code"), which was critical to Nonparty-1's success in equity and security trading. *Id.* The Indictment alleges that, in the spring of 2021, Defendant started his own quantitative trading firm in partnership with a competitor of Nonparty-1. *Id.*, ¶ 2. While still employed at Nonparty-1, Defendant is alleged to

have used his access to the Source Code to steal the building blocks of the Source Code, known as "Atoms," as well as some of its predictive formulas. *Id.* According to the Indictment, Defendant used Nonparty-1's trade secrets to launch his own firm. Defendant's firm is alleged to have used a trading strategy similar to one of Nonparty-1 trading strategies, known as "AP1." *Id.*, ¶ 17.

**B.    Procedural Background**

On August 4, 2025, Defendant served a subpoena on Nonparty-1 pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. ECF No. 59, ¶ 3. The subpoena seeks 18 categories of documents, spanning a date range of 2019 to the present. *Id.*, Ex. 1 (the "Subpoena").

On September 19, 2025, Nonparty-1 brought the instant motion to quash the Subpoena. ECF No. 57. Nonparty-1 argues that the Subpoena is unduly burdensome; requests irrelevant documents; requires Nonparty-1 to identify which of the over 2.3 million pages of documents already produced by the Government are responsive to the Subpoena; requests duplicative information that Nonparty-1 has already produced to Defendant in civil litigation; and requests materials that Defendant claims Nonparty-1 is otherwise prohibited from disclosing, including in response to compulsory requests from enforcement authorities, due to a protective order in the civil case. ECF No. 58 ("Nonparty-1 Mem.") at 1, 3. Nonparty-1 and the Government, which joins Nonparty-1's arguments, ECF No. 72 ("Gov't Ltr.") at 1, argue that the Subpoena fails to satisfy the standards for a Rule 17(c) Subpoena outlined by the Supreme Court in *United States v. Nixon*. 418 U.S. 683 (1974).

Defendant opposes Nonparty-1's motion on the grounds that *Nixon* does not apply to Rule 17(c) subpoenas served by the defense on nonparties, or in the alternative that the requests in the Subpoena are proper under *Nixon* because they are relevant, specific, and admissible. ECF No. 65 ("Opp'n Mem.") at 1. Defendant also submitted an *ex parte* appendix under seal ("Sealed Appendix" or "App'x"), which provides further argument as to the relevance of the documents sought to confidential defense theories.

In response to the motion to quash, Defendant has now withdrawn Request No. 1. Opp'n Mem. at 2. In turn, Nonparty-1 represents that it is prepared to produce redacted versions of Request No. 7, denies that documents responsive to Request No. 8 exist, and is prepared to produce documents responsive to Request No. 17 if required by the Court.

Nonparty-1 seeks to quash the remaining requests for documents related to former employees (Request Nos. 2-6); documents related to proprietary business plans and trading details (Request Nos. 9-12); documents related to the Nonparty-1's proprietary source code and algorithmic trading strategies (Request No. 13-16); and documents related to Nonparty-1's visualizer (Request No. 18)." Nonparty-1 Mem. at 5.

## LEGAL STANDARDS

Federal Rule of Criminal Procedure 17(c) governs the production of documents and objects by subpoena in a criminal case. In contrast to the broad subpoena powers enjoyed by civil litigants and by the Government, utilizing the

3

grand jury, the Supreme Court has cautioned that a Rule 17(c) subpoena is "not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698. Indeed, "[c]ourts must be mindful not to allow the Rule 17(c) process to become a broad discovery device that would undermine the discovery procedures set forth in Rule 16." *United States v. Shestakov*, No. 23 CR.16 (JHR), 2025 WL 507523, at *1 (S.D.N.Y. Feb. 14, 2025) (cleaned up). Accordingly, courts "may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Under *Nixon*, a party seeking documents through a Rule 17(c) subpoena has the burden of showing "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700. In sum, the issuer of a Rule 17(c) subpoena must demonstrate (1) relevancy, (2) admissibility, and (3) specificity of the requests therein. *Id.* at 700.

To be "relevant" in this context, the materials must "make any element of the charged crimes more or less likely." *United States v. Peraire-Bueno*, 2025 WL 2062021, at *16 (S.D.N.Y. July 23, 2025) (granting motion to quash requests for third-party's trading strategies and financial reports); *see also Contreras v. Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("Evidence is relevant if it has any tendency in

4

reason to prove the existence of any material fact, i.e., it makes determination of the action more probable or less probable than it would be without the evidence.").

Second, "to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must reasonably specify the information contained or believed to be contained in the documents sought[,] rather than merely hope that something useful will turn up." *United States v. Sawinski,* No. 00-CR-499 (RPP), 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) (cleaned up).  The subpoena must "constitute a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Barnes*, No. 04-CR-186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) (cleaned up).  "Subpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512 (S.D.N.Y. 2013).

Finally, "Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation." *United States v. Rich*, No. 83-CR-579 (SWK), 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984).

A standard "less stringent" than *Nixon* for Rule 17(c) subpoenas served by defendants on nonparties, first adopted by Judge Scheindlin in *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), has been adopted by a limited number of courts within this District.  *See, e.g., United States v. Weigand*, 520 F. Supp. 3d 609

5

(S.D.N.Y. 2021). That standard requires that the information sought be "material to the defense" and not be "unduly oppressive" for the producing party. *Tucker*, 249 F.R. D. at 66. However, that standard is not the practice of the "overwhelming majority" of courts in the Second Circuit, *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021), which have "almost unanimously" applied *Nixon* to subpoenas served on third-parties. *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (quoting *Skelos*, 2018 WL 2254538, at *1). The Second Circuit has endorsed application of *Nixon* to this context, though without disavowing the *Tucker* standard. *Skelos*, 988 F.3d at 661 (2d Cir. 2021) ("[a]pplying [the *Nixon*] standard . . . we see no abuse of discretion . . . in the district court's quashing of the . . . subpoenas"); *see also United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) ("Whether under the *Nixon* standard or the standard articulated in *Tucker*, we conclude that the district court did not abuse its discretion in quashing the subpoenas"). Ultimately, enforcement of a Rule 17(c) subpoena remains within the sound discretion of the Court. *Nixon*, 418 U.S. at 702.

## DISCUSSION

In light of the Second Circuit's "routine appl[ication of] the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant," *United States v. Ray*, 337 F.R.D. 561, 573 at n. 4 (S.D.N.Y. 2020), this Court evaluates the Subpoena per the *Nixon* standard. Accordingly, the Court will assess each of the Subpoena's requests for relevancy, admissibility, and specificity. *Nixon*, 418 U.S. at 700. Applying that standard, the Court grants the motion to quash Request Nos. 9, 12-13, and 15-16;

6

and denies the motion to quash Request Nos. 5, 6, 14, and 17. The Court modifies Request Nos. 2-4, 6, 8, and 10-11.

To the extent that Nonparty-1 objects to the production of documents as a violation of a Protective Order issued in a pending Illinois civil case, the Court overrules such objection. That Protective Order explicitly states that "[n]othing in [that] Order shall prevent a Party from disclosing Confidential Information or Trade Secrets belonging to another party . . . in connection with a compelled legal process, such as a subpoena . . . [or] other legal proceedings relating to the subject matter of this litigation[.]" ECF No. 59-4 at 1. Thus, nothing in that Protective Order prohibits Nonparty-1 from providing documents in response to the Subpoena.

### 1.    Request Nos. 2-4

Request Nos. 2-4 seek communications from July 9, 2021, to the present between Nonparty-1 and three of its former employees who also worked with Mr. Ho at his new high-frequency trading firm. Subpoena at 6-7. These requests cover agreements between the former employees and Nonparty-1; documents provided by the former employees to Nonparty-1; and notes, transcripts, or memoranda from Nonparty-1's interactions with the former employees addressing "the subject matter of" this criminal case or the pending civil case against Mr. Ho by Nonparty-1. They also seek materials provided by or given to Nonparty-1's counsel or former employees' counsel.

Defendant's Sealed Appendix adequately establishes the relevance of these categories of documents. App'x at 6-7. However, these requests fail on specificity

7

grounds.  A subpoena does not satisfy *Nixon*'s specificity requirement where it "blindly seeks 'all' documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence."  *Barnes*, 2008 WL 9359654, at *4.  Each of these requests could be preceded by the phrase "any and all" without changing their meaning.  Moreover, where a defendant "does not know whether or not some of the documents requested even exist," such request "evinces that the Defendant seeks through the subpoena to acquire voluminous materials in the hope that a review of them will uncover some evidence . . . helpful to his defense."  *United States v. Avenatti*, No. 19-CR-373 (PGG), 2020 WL 508682, at *4 (S.D.N.Y. Jan. 31, 2020).

Defendant's repeated assertions that Nonparty-1 can simply "say so" if it "has nothing else" betray his uncertainty as to whether the categories of documents he seeks exist beyond a hunch.  Opp'n Memo at 9-10.  Compliance with the Subpoena as worded therefore would be unreasonable or oppressive.

Mr. Ho's Sealed Appendix does make clear, however, that there are documents responsive to these requests that would satisfy the *Nixon* standard of relevance, specificity, and admissibility.  The Court therefore modifies these three requests so that they are limited to the following: Agreement terms between Nonparty-1 and Engineers -1, -2, and -3 that restrict the engineers' usage, management, reproduction, or disclosure of Nonparty-1 work product, including Nonparty-1's visualizer.

8

2. **Request No. 5**

Request No. 5, which seeks drafts of, comments on, and edits to Engineer-1's sworn declaration dated July 10, 2023, that were exchanged between Nonparty-1 and Engineer-1 before finalizing Engineer-1's declaration, seek relevant material insofar as it sheds light on what information Engineer-1 did and did not know to support his "concern" that Mr. Ho had stolen trade secrets from Nonparty-1, including as to the allegations of information deletion in the Indictment. Subpoena, ¶ 5; Indictment, ¶¶ 21-23. Most compellingly, Defendant's Sealed Appendix includes a concrete purpose for which he seeks prior drafts of the declaration. App'x at 6. This request is specific: it seeks iterations of a particular document at a specific time. It could not be obtained another way. This request leads, too, to likely admissible evidence, as Mr. Ho seeks these documents for state-of-mind purposes. Accordingly, the motion to quash Request No. 5 is denied.

3. **Request No. 6**

Request No. 6 seeks pre-employment communications between Nonparty-1 and Mr. Ho, between Nonparty-1 and Engineer-1, and between Nonparty-1 and Engineer-4. Subpoena, ¶ 6. Defendant explains the relevance of this request in his Sealed Appendix. Opp'n Mem. at 10; App'x at 7. However, Defendant's request can be more specifically tailored, under *Nixon*, to the purpose for which he poses it. Request No. 6 is therefore modified as follows: Correspondence between [Nonparty-1] and Mr. Ho, Wen Jia Liu, or Hai-Son Le, from Headlands' first contact with each individual to each employee's respective start date.

9

4. **Request No. 8**

Nonparty-1 represents—and Mr. Ho does not dispute—that Mr. Ho's performance reviews, sought by Request No. 8, were delivered orally and therefore cannot be produced. Nonparty-1 Mem. 4-5; Opp'n Mem. 15. Mr. Ho decries this "narrow reading" of this request, which also seeks "notes or memoranda regarding any interactions . . . relating to such performance reviews." Opp'n Mem. at 15. As written, the relevance of this request is specious, and its scope is overbroad. This request is therefore quashed.

5. **Request No. 9**

Request No. 9, seeking Nonparty-1's business development plans "addressing whether or not to trade in Markets in China" during Mr. Ho's employment with Nonparty-1, Subpoena, ¶ 9, plausibly seeks documents that are relevant for the reasons Mr. Ho discusses in the Sealed Appendix, App'x at 8, yet is overbroad as drafted. Accordingly, Request No. 9 is modified as follows: documents reflecting communications between Nonparty-1 and Mr. Ho addressing whether or not Nonparty-1 intended to trade in Markets in China.

6. **Request Nos. 10-11**

Request No. 10 seeks Nonparty-1's monthly trading profit or loss, with subtotals for all revenue and expense subcategories (e.g., trading revenue, rebates, commissions, and fees) for each month from March 2019 through December 2024. Subpoena, ¶ 10. Request No. 11 seeks "for each of AP1 and PT2 alone, for each asset and contract in each Market in which [Nonparty-1] deployed AP1 or PT2, the

10

same monthly information as requested in item 10 above, and monthly trading volumes over the same period." Subpoena, ¶ 11. Defendant's Sealed Appendix sufficiently establishes the relevance of the requested documents.

These requests are overbroad and unduly oppressive, however. As Nonparty-1 points out, these requests cover a number of years and different categories of information, potentially seeking an overwhelming amount of data given the volume of daily trading activity. NonParty-1 Mem. at 17. Nonparty-1 also objects that it has provided certain profit and loss information to the Government, which has now been produced to the Defendant. *Id.* at 18. Defendant counters that the spreadsheet with which it was provided contains "monthly net profit or loss amounts for only a portion of the period and for only the two specified trading strategies." Opp'n Mem. at 12 n.6. Based upon that production, it would appear that Nonparty-1 has the capability without undue burden to provide similar profit and loss information for the entirety of the time period and across all the requested trading strategies, in the same format as HT_DOJ_02349207. Request No. 10 is modified accordingly. With respect to Request No. 11, the Court modifies it to require production, for each asset and contract in each Market in which Nonparty-1 deployed AP1, of the same monthly information as provided with respect to Request No. 10.

### 7. Request Nos. 12-13

The reasons Mr. Ho sets forth in his Sealed Appendix for Request No. 12, App'x at 9, seeking "Order Events derived from deploying AP1 or PT2 on any exchange operated by CME or ICE" during the charged offense, Subpoena, ¶ 12, do

11

not "reasonably specify the information contained in or believed to be contained in the documents," *United States v. Menendez*, No. 23-CR-490 (SHS), 2024 WL 2801960, at *1 (S.D.N.Y. May 31, 2024), and can thus be summarized as a "fishing expedition" under *Nixon*. 418 U.S. at 700. Accordingly, Request No. 12 is quashed. Further, the information sought by Request No. 13 about the expense incurred by Nonparty-1 to develop source code for AP1 does not "make any element of the charged crimes more or less likely." *Peraire-Bueno*, 2025 WL 2062021, at *16. Accordingly, Request No. 13 is likewise quashed.

8.  **Request No. 14**

Request No. 14, as amended, ECF No. 59-2 at 7, seeks, for each of AP1, PT2, and Long Term, (i) the name of each individual who had access to source code for the strategy and (ii) the department and team to which each such person belonged on July 1 of each year for the years 2019-24. The Government contends that this information is irrelevant after July 2021 when Defendant is alleged to have taken trade secrets without authorization. Gov't Ltr at 11. However, the Indictment charges Mr. Ho with the "intent to convert a trade secret" from "at least in or about 2019 through in or about January 2025." Indictment, ¶ 24. Accordingly, the timeframe identified by Defendant's request is appropriately relevant and specific, since admissible business records identifying individuals with access to Nonparty-1's allegedly stolen source code would bear on whether Nonparty-1 took "reasonable measures to keep . . . secret" the alleged trade secrets that Defendant is alleged to

12

have taken, as defined per 18 U.S.C. § 1839(3). The Motion to Quash with respect to Request No. 14 is denied.

9.     **Request No. 15**

Defendant does not address Nonparty-1's contention that the Government's production includes numerous documents regarding the algorithm-update instructions sought in Request No. 15. Nonparty-1 Mem. at 21; Opp'n Mem. at 15-16; App'x at 10-11. Absent such a showing, Request No. 15 is quashed.

10.    **Request No. 16**

Defendant fails to rebut Nonparty-1's contention that the material he seeks in this request already exists among the Government's production. Nonparty-1 Mem. at 25; Gov't Ltr. at 11 ("because the Government has already produced the defendant's entire Nonparty-1 email inbox, which receives notification emails from Bitbucket of the defendant's pull requests and comments to the defendant's pull requests, the defendant is already in possession of substantially all, if not all, of the materials it seeks in Request No. 16"); Reply at 3. Accordingly, Request No. 16 is quashed.

11.    **Request No. 17**

Request No. 17 seeks guidance and instructions to Nonparty-1's employees regarding coding style and the use of formatting or linting tools for coding during the period of Mr. Ho's employment. Subpoena, ¶ 17. Nonparty-1 has identified and is prepared to produce a small set of documents responsive to this request if the Court deems it proper. Nonparty-1 Mem. at 5. Defendant has established sufficient

13

relevant basis for the request of these particular, identified, and admissible manuals in the Sealed Appendix. App'x at 12. Accordingly, the Motion to Quash with respect to Request No. 17 is denied.

### 12. Request No. 18

Request No. 18 seeks screenshots of Nonparty-1's visualizer as it existed in June or July 2021, when the Indictment alleges that Mr. Ho launched the visualizer, which Nonparty-1 allegedly touted in trainings "as a specific example of confidential information," in Engineer-2's presence. Subpoena, ¶ 18; Indictment, ¶ 16. The Government has previously produced visualizer images that Defendant characterizes as "grainy." ECF No. 59-2, Ex. 2 at 7. Nonparty-1 characterizes the visualizer as a "live feature that, among things, visualizes market data, . . . of which no historical screenshots can be created" and regardless disputes any similar representations' relevancy. Nonparty-1 Mem. at 22 (internal quotation marks omitted). The Court does not reach its relevancy inquiry with respect to this request because, "[t]o the extent that [Defendant] has a basis to argue that the Government has not met its discovery obligations" with respect to previously produced material, "the Rule 17(c) subpoena process is not the proper mechanism for pursuing that. Rather, with notice to the Government so that the issue is properly joined, [Defendant] must make some showing of that failure and seek specific and appropriate relief from this Court." *United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021). Accordingly, Request No. 18 is quashed.

## CONCLUSION

Accordingly, Nonparty-1's Motion to Quash is **GRANTED in part** and **DENIED in part**. The Clerk of Court is directed to terminate ECF No. 57.

SO ORDERED.

Dated: January 23, 2026                 _____
       New York, New York                   JEANNETTE A. VARGAS
                                           United States District Judge