UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                        :

UNITED STATES OF AMERICA           :

     -v-                      :       25-CR-00003 (JAV)

CHEUK FUNG RICHARD HO,       :       OPINION AND ORDER

           Defendant.      :

-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On January 6, 2025, a grand jury returned a 13-page indictment against Cheuk Fung Richard Ho (the "Defendant"), charging him with one count of theft and attempted theft of trade secrets in violation of the Economic Espionage Act ("EEA"), 18 U.S.C. § 1832(a)(1)-(a)(4). ECF No. 3 ("Indictment" or "Ind."), ¶ 24. The Defendant brought this motion to dismiss the Indictment as unconstitutionally vague and lacking in specificity pursuant to Rule 12(b)(3)(B)(iii) of the Federal Rules of Criminal Procedure. ECF No. 70. Alternatively, he seeks a bill of particulars specifically describing the trade secrets he is alleged to have stolen. *Id.*

On May 18, 2026, after this motion was fully briefed, the Government filed a Superseding Indictment, adding a second count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. ECF No. 103, ¶ 30. Count One, pertaining to the theft and attempted theft of trade secrets, remained largely unchanged. *Id.*, ¶ 28. The parties have elected to rest on their briefs with respect to the motion to dismiss the theft and attempted theft of trade secrets charge, and have asked to apply those

1

motion papers to Count One of the Superseding Indictment, with the Defendant reserving his right to separately move for dismissal of Count Two.  ECF No. 108.[1]

For the reasons that follow, the Defendant's motion to dismiss Count One of the Superseding Indictment is **DENIED**, and the motion for a bill of particulars is **GRANTED.**

## BACKGROUND

### A.    The Indictment

The Indictment charges that, from in or about July 2019 to in or about August 2021, the Defendant worked as a research developer and quantitative trader at Firm-1, a global quantitative trading firm, which trades in equities and other securities on exchanges based on the execution of computer code.  Ind., ¶¶ 1, 5. Quantitative trading firms compete based on the quality of their research and technology, which are embodied in the computer code that they use to execute automated trading decisions.  *Id.*, ¶¶ 6, 7.

The Indictment sets forth how Firm-1 spent years and over a billion dollars developing its Source Code, *id.*, ¶ 7, which is the foundation of Firm-1's competitive advantage in the market, *id.*, ¶ 9.  Firm-1 has taken a number of measures to protect the confidentiality of its Source Code.  *Id.*  The building block of Firm-1's Source Code is its library of "Atoms," which is code that has specific functions,

---

[1] Although the Court deems the motion to dismiss to pertain to Count One of the Superseding Indictment, all references in the moving papers were to the original indictment.  Accordingly, for ease of reference, this opinion shall similarly cite exclusively to the allegations in the Indictment, rather than the corresponding paragraphs in the Superseding Indictment.

ranging from computational functions to price-predicting computations.  *Id.*, ¶ 8. Each Atom is given a name, which is often unique.  *Id.*  Combinations of Atoms are used to build Alphas, which are formulas that make price predictions based on real-time market data.  *Id.*

According to the Indictment, in July 2021, the Defendant resigned from Firm-1.  *Id.*, ¶ 15.  Notwithstanding a non-compete covenant in his employment contract, *id.*, ¶ 11, the Defendant had incorporated his own quantitative trading firm two months prior, *id.*, ¶ 14.  The Indictment alleges that, in order to develop source code for his new firm ("ORS"), the Defendant copied components of Firm-1's Source Code.  *Id.*, ¶ 18.  The Indictment defines this misappropriated code as the "Stolen Trade Secrets."  *Id.*  The Indictment describes the "Stolen Trade Secrets" as "portions of Firm-1's Source Code (including Firm-1's Atoms and Alphas), which were predominately written in the C++ and Java programming languages, and which [the Defendant] translated into the C++ and Python coding languages while preserving the structure, logic, trading insights, and functionality of Firm-1's Source Code."  *Id.*

The Indictment provides one specific example of misappropriated Source Code.  The Indictment states that one Alpha in Firm-1's Source Code contains the comment, "remove old data if it results in predications that are too far off," while the source code for ORS included the comment "remove data that causes far-away predictions."  *Id.*

3

**B.    Procedural History**

On February, 26, 2025, the defense requested a bill of particulars specifying the particular portions of the Source Code that allegedly constituted the Stolen Trade Secrets alleged in the Indictment.  ECF No. 71 at 3.

On May 9, 2025, the Government produced to Defendant a spreadsheet that consists of a chart of 61 rows, where each row identifies one or more Firm-1 files and one or more ORS files.  *Id.* at 3-4; ECF No. 76 at 5.  The Government represented that the spreadsheet "provides a non-exhaustive list of Bates numbers of the portions of ORS code that the Government alleges were misappropriated, and the corresponding code from [Firm-1]."  ECF No. 71 at 3.  The Defendant renewed his request for a bill of particulars, arguing that a non-exhaustive list does not satisfy a request for particulars and that the Government had not affirmatively indicated whether all of the listed portions of code are alleged to be trade secrets. *Id.* at 3-4.

The Government subsequently confirmed that the spreadsheet "identifies by file path approximately 61 portions of [Firm-1's] code that, either individually or taken as a whole, constitutes the 'Stolen Trade Secrets' described in the Indictment," but maintained that the list is non-exhaustive, representing that "[t]he Government will supplement this spreadsheet if and when it identifies additional . . . trade secrets that were stolen by the defendant."  *Id.* at 4.

On February 17, 2026, the Government produced an expert disclosure pursuant to Rule 16(a)(1)(G).  ECF No. 91 at 1.  The disclosure indicated that 48 ORS individual source code files shared substantial similarities with 61 source code files belonging to Firm-1, such that it was the Government's contention that those ORS files reflect plagiarism from the Firm-1 code.  *Id.*

Three days later, the Government produced an updated spreadsheet, which purports to replace the spreadsheet that had been provided in May 2025.  *See id.* The new spreadsheet identifies 54 Firm-1 Source Code files, which are a subset of the 61 Firm-1 Source Code files identified in the Government's expert disclosure as demonstrating substantial overlap with ORS source code files.  *Id.*  The Government explained that those 54 Firm-1 Source Code files both individually and together constitute the Stolen Trade Secrets.  *Id.* at 1-2.  Defendant claims that less than half of the chart matches the 61-row chart produced in May 2025.  ECF No. 90 at 3 n.3.  The Government represents that, of the 54 Firm-1 Source Code files identified in the updated spreadsheet, 35 were previously disclosed to the Defendant in the May 2025 spreadsheet, and that only 19 of the Source Code files are newly identified.  ECF No. 91 at 2.

### DISCUSSION

A.    **Motion to Dismiss the Indictment**

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him."  *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000).  Accordingly, Federal Rule of Criminal Procedure 7 provides that an

"indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficiently detailed if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and additionally "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citation omitted). An indictment must also contain sufficient "factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (citation omitted).

The requirements of Rule 7(c) are not onerous. To satisfy this rule, in most cases "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (citation omitted). Additionally, "[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002) (cleaned up).

Dismissal of an indictment is an "extraordinary remedy" that should only be exercised to protect a defendant's fundamental rights. *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted). The Second Circuit has therefore repeatedly refused to dismiss charges for a lack of specificity "[w]hen the charges in an indictment have stated the elements of the offense and provided even

6

minimal protection against double jeopardy." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).

"Indictments generally do *not* have to specify evidence or details of how the offense was committed." *United States v. Raniere*, 384 F. Supp. 3d 282, 298 (E.D.N.Y. 2019) (internal quotation marks omitted) (quoting *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017) (Nathan, J.)). The Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial." *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012) (citation omitted). "The 'core of criminality' of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *Id.* at 418. For example, in *United States v. Resendiz-Ponce*, the Supreme Court rejected the notion that an indictment charging a defendant with attempted reentry into the United States needed to specify the overt acts that constituted the attempt. 549 U.S. at 787-88. It was sufficient that the indictment used the word "attempt," because that word "encompasses both the overt act and intent elements." *Id.* at 787.

There is a "narrow category" of statutes, however, where "specification of how a particular element of a criminal charge will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment." *Stringer*, 730 F.3d at 126-27. "Offenses that require specificity tend to be ones with a generic statutory

definition." *Raniere*, 384 F. Supp. 3d at 298.  Examples include identification of which statements are false, and in what respect they are false, in a charge of criminal falsity, or specifying the nature of the congressional inquiry in a charge for refusal to answer questions pertinent to a congressional inquiry.  *Stringer*, 730 F.3d at 126-27.

In this case, the Indictment plainly alleges each element of an offense under Section 1832.  As codified, the EEA provides, in relevant part:

> (a) Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—
>
> > (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
> >
> > (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
> >
> > (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; [or]
> >
> > (4) attempts to commit any offense described in paragraphs (1) through (3) . . .
> >
> > shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1832.

A "trade secret" is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

*Id.* § 1839(3).

The Indictment alleges that the Defendant, without authorization, stole, copied, and possessed his former employer's trade secret, namely portions of its proprietary Source Code, including certain Atoms and Alphas, with the requisite intent and knowledge. Far from merely reciting the statutory elements, the Indictment details over 13 pages the nature of the trade secrets at issue, the economic value of the Source Code to Firm-1, the steps Firm-1 took to protect the confidentiality of the Source Code, how the Defendant gained access to the Source Code, the Defendant's motive in appropriating portions of Firm-1's Source Code, his incorporation of portions of the Source Code into the ORS source code, including an example of a stolen portion of the Source Code, and his efforts to conceal from his

9

employees his incorporation of Firm-1's unique Atoms and Alphas into the ORS source code. These detailed allegations are sufficient to provide the Defendant with notice of the charged offense.

The Defendant's only argument regarding the insufficiency of the allegations is that, because the Indictment does not comprehensively list each portion of the Source Code that was appropriated, it is unconstitutionally vague. ECF No. 71 at 6-7. The defense primarily relies on *United States v. Case*, a case from the United States District Court for the Southern District of Mississippi, which, *inter alia*, dismissed two counts of an indictment alleging theft of trade secrets for failure to adequately specify the trade secret at issue. No. 06-CR-210 (TSL) (LRA), 2007 WL 1746399, at *3-4 (S.D. Miss. June 15, 2007). The district court in *Cave* held that the term "trade secret" was generic, and that the government was therefore required to plead the nature of the stolen trade secret with particularity. *Id.*

Yet in stark contrast to the language at issue here, the indictment in *Cave* vaguely identified the stolen trade secret as "technology related to the design specifications, manufacture and sale of military and commercial aviation hydraulics products." *Id.* at *1. The district court found that this broad definition did not provide the defendants with sufficient notice of the charged offense, particularly given the context that the defendants were alleged to have stolen an "entire universe" of information from their former employer, only some of which the government alleged constituted trade secrets. *Id.* at *4.

10

The Court does not reach the question of whether the term "trade secrets" is so generic that more particularized allegations are required. Even assuming that the EEA constitutes the rare statute that demands more than a recitation of the statutory elements, *Stringer*, 730 F.3d at 126, the Indictment here would meet that heightened standard. Unlike in *Case*, where it was not clear what information from a broad universe of documents and data was at issue, the Indictment makes clear that the Source Code is a trade secret, and the Defendant stole portions of that Source Code. That the Source Code is voluminous and contains numerous discrete portions that themselves constitute trade secrets does not mean that the Indictment is constitutionally deficient for failure to specify individual file paths or portions of code within the singular Source Code. In other words, the "lack of detail in that part of the indictment . . . is more like an absence of detail as to how the crime was committed than a failure to specify what the crime was." *United States v. Kay*, 359 F.3d 738, 759 (5th Cir. 2004).

This case is thus more akin to *United States v. Liew*. In *Liew*, the defendants were charged under the EEA with misappropriating a 407-page document, which "provided the scope and basic data for DuPont's then-planned chloride-route plant in Taiwan [and] contained the process and equipment information necessary to design a greenfield[,] world-class production scale, integrated chloride-route TiO2 production line." No. 11-CR-00573-1 (JSW), 2013 WL 2605126, at *3 (N.D. Cal. June 11, 2013). The document itself stated that "[m]uch of the report data are considered in the 'trade secret' category," and the indictment alleged that the

11

document "was itself a trade secret and it contained numerous discrete trade secrets within it." *Id.* The defendants contended that the failure to identify the discrete trade secrets within the document rendered the indictment unconstitutionally vague. *Id.* at \*6. The district court rejected this argument, holding that the indictment provided the defendants with the "essential facts necessary to apprise them of the crime charged." *Id.* at \*7 (cleaned up); *see also United States v. Chen,* No. 17-CR-00603-1 (BLF), 2020 WL 6342931, at \*4 (N.D. Cal. Oct. 29, 2020) (rejecting challenge to specificity of indictment charging theft of trade secret where indictment alleged that defendants had stolen thousands of CAD drawings constituting trade secrets).

As in *Liew*, the Defendant has been provided sufficient notice of the essential facts necessary to defend against the charges. The motion to dismiss Count One of the Superseding Indictment is therefore denied.

## B.    Bill of Particulars

The Second Circuit has explained:

> Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v.*

*Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (cleaned up).  Where the information sought by a defendant is provided through discovery, however, no bill of particulars is required.  *United States v. Nunez*, No. 22-CR-293 (JPO), 2025 WL 547805, at *2 (S.D.N.Y. Feb. 19, 2025); *see also Chen*, 378 F.3d at 163 ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." (citation omitted)); *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) ("A district court judge . . . has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form." (cleaned up)).  "Whether to grant a bill of particulars is generally a decision entrusted to the sound discretion of the district court." *United States v. Ramirez*, 609 F.3d 495, 502 (2d Cir. 2010).

Defendant argues that the Indictment did not advise him of the specific portions of the Source Code that he allegedly stole.  Yet the Government has provided the relevant information through discovery.  The Government has identified, both through its production of the spreadsheet and through its expert disclosures pursuant to Rule 16(a)(1)(G), the discrete portions of Firm-1's Source Code, including the file paths of those pieces of code, that the Government alleges are the Stolen Trade Secrets.  In these circumstances, a separate bill of particulars would ordinarily be unnecessary.[2]

---

[2] The Defendant argues that a bill of particulars is necessary to ensure that, at trial, the Government does not introduce evidence regarding trade secrets that were not presented to the grand jury.  ECF No. 77 at 7-9.  That is not the purpose of a bill of

That said, the Court is concerned about the Government's shifting representations regarding the precise components of the Source Code that it will claim at trial constitutes the Stolen Trade Secrets, including its repeated caveats that it reserves the right to continue to supplement or amend its list defining the Stolen Trade Secrets.  The Defendant is entitled to know prior to trial what he is alleged to have stolen or attempted to steal so that he can adequately prepare his defense.  Other courts have ordered the Government to submit a bill of particulars identifying the specific trade secrets alleged to have been stolen in similar circumstances.  *See, e.g.*, *Chen*, 2020 WL 6342931, at *5; *Liew*, 2013 WL 2605126, at *8.

Accordingly, the Court orders the Government to submit a bill of particulars as to Count One of the Superseding Indictment identifying the specific portions of the Source Code alleged to be Stolen Trade Secrets, whether individually or in combination.  The bill of particulars need not be more specific or detailed than what the Government has already provided in the context of its expert disclosures, *see Chen*, 2020 WL 6342931, at *5; the purpose is to ensure that the Government's theory of the case is fixed in order to minimize prejudicial surprise at trial.

## CONCLUSION

The motion to dismiss Count One of the Superseding Indictment is DENIED. The motion for a bill of particulars as to Count One of the Superseding Indictment is GRANTED.  The Government shall file its bill of particulars within seven days of this Opinion and Order.

---

particulars, however.  Moreover, such arguments, which go to constructive amendment of the indictment and variance, are premature.

The Clerk of Court is directed to terminate ECF Nos. 70 and 108.

SO ORDERED.

Dated: June 1, 2026
      New York, New York

                                  JEANNETTE A. VARGAS
                                United States District Judge