UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
        -v-                                         :        25-CR-00003 (JAV)
                                                    :
CHEUK FUNG RICHARD HO,                              :        OPINION AND ORDER
                                                    :
                Defendant.                          :
                                                    :
--------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Defendant Cheuk Fung Richard Ho (the "Defendant") moves to unseal

Exhibits A through D of the Government's opposition to the Defendant's motion to

preclude expert testimony.  ECF No. 117.  For the reasons that follow, the motion is

**GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The Defendant is charged as a principal with one count of theft and

attempted theft of trade secrets in violation of the Economic Espionage Act ("EEA"),

18 U.S.C. § 1832(a)(1)-(a)(4), and one count of wire fraud in violation of 18 U.S.C.

§ 1343.  ECF No. 103 ("Indictment" or "Ind."), ¶¶ 28, 30.  The Indictment charges

that, from in or about July 2019 to in or about August 2021, the Defendant worked

as a research developer and quantitative trader at Firm-1, a global quantitative

trading firm, which trades in equities and other securities on exchanges based on

the execution of computer code.  *Id.*, ¶¶ 1, 6-7.  Quantitative trading firms compete

based on the quality of their research and technology, which are embodied in the

computer code that they use to execute automated trading decisions.  *Id.*, ¶¶ 6, 7.

The Indictment sets forth how Firm-1 spent years and over a billion dollars developing its source code (the "Source Code"), *id.*, ¶ 8, which is the foundation of Firm-1's competitive advantage in the market, *id.*, ¶ 10. Firm-1 has taken several measures to protect the confidentiality of its Source Code. *Id.* The building blocks of Firm-1's Source Code are "Atoms," each of which is code that has specific functions, ranging from computational functions to price-predicting computations. *Id.*, ¶ 9. Each Atom is given a name, which is often unique. *Id.* Combinations of Atoms are used to build "Alphas," which are formulas that make price predictions based on real-time market data. *Id.*

According to the Indictment, in July 2021, the Defendant resigned from Firm-1. *See id.*, ¶ 19. Notwithstanding a non-compete covenant in his employment contract, *id.*, ¶ 12, the Defendant had incorporated his own quantitative trading firm ("ORS") two months prior, *id.*, ¶ 15. The Indictment alleges that, in order to develop source code for ORS, the Defendant copied components of Firm-1's Source Code, which are the alleged stolen trade secrets. *Id.*, ¶ 22.

## DISCUSSION

The exhibits that are the subject of the Defendant's unsealing motion are the Government's expert disclosures. *See* ECF Nos. 110-1, 110-2, 110-3, 110-4. The Defendant argues that "none of the information in the disclosures warrants sealing, and particularly not the information that does not constitute computer code." ECF No. 117 at 1. The Government opposes unsealing. ECF No. 119 at 1. As the expert disclosures set forth "in granular detail, the Government experts' analyses of dozens

of stolen Firm-1 source code files and the copied ORS source code files—including discussions regarding the code used, functionality, and even quoting significant portions of the code verbatim," and as it is the Government's position that the Firm-1 Source Code constitutes stolen trade secrets, the Government contends that these documents must remain sealed.  *Id.*

The presumptive right of the public to access judicial documents is firmly entrenched in both the common law and the First Amendment.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).  The presumption of access "applies to documents filed in connection with criminal proceedings."  *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989).

Under the common law inquiry, courts apply a three-part test to determine if sealing is appropriate.  First, courts must determine whether the records at issue are judicial documents, that is, whether "the item[s] filed [are] relevant to the performance of the judicial function and useful in the judicial process."  *Lugosch*, 435 F.3d at 119 (citation omitted).  Second, if the records are judicial documents, courts assess the weight to be given to the presumption of judicial access, "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Id.* (citation omitted).  Third, courts balance the presumption of judicial access against "competing considerations against it," such as privacy interests or the confidentiality of business records.  *Id.* at 120 (citation omitted).

"A qualified First Amendment right of access, understood to be stronger than its common law ancestor and counterpart, also attaches to certain judicial documents." *United States v. Greenwood*, 145 F.4th 248, 255 (2d Cir. 2025) (cleaned up). To determine whether the First Amendment presumption of access applies, the Second Circuit applies an "experience and logic" approach. *Lugosch*, 435 F.3d at 120. That approach "requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (quoting *Press–Enterprise Co. v. Superior Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8 (1986))). "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation omitted). Where the presumptive First Amendment right of access applies, "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (citation omitted). "Higher values that may justify redactions include the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure, as well as financial records, family affairs, illnesses, and embarrassing conduct with no public ramifications." *Greenwood*, 145 F.4th at 256 (cleaned up).

Additionally, the EEA requires that, "[i]n any prosecution or other proceeding under this chapter, the court shall enter such orders and take such other action as

4

may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835(a).

The exhibits at issue here constitute judicial documents, as they were filed in connection with the pending *Daubert* motions. *See generally* ECF Nos. 97, 99. Yet the Second Circuit has held that "the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). Accordingly, "while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings," *id.*, or sentencing submissions, *Greenwood*, 145 F.4th at 255-56.

The Court has conducted an individualized review of the four exhibits in question. With respect to Exhibit A, the expert disclosure of Lena Loewenstine, the sections of the report that consist of Loewenstine's qualifications, prior testimony, background information regarding computer coding, and her methodology do not contain any information that arguably constitute trade secrets. Similarly, the Appendices to the report, which include the expert's resume and a list of the materials considered, do not appear to contain any of Firm-1's proprietary information. The remainder of the report, which consists of Loewenstine's analysis of the ORS and Firm-1 codes at issue, is replete with specific references to the computer code files that are alleged to constitute the trade secrets in this matter.

5

Sealing of those sections of the report is therefore warranted to protect the higher interest in protecting Firm-1's potential trade secrets.

The Court finds that Exhibits B and C should remain sealed in their entirety. These supplemental expert disclosures by Loewenstine address in detail the Source Code at issue and there are no reasonably discrete sections that do not discuss the Source Code.

Finally, the sections of Exhibit D that consist of the expert's qualifications, prior testimony, the publications on which he relies for his opinions, background information regarding code written for high frequency trading, and an overview of his opinions (excluding paragraphs 14-16, which discusses Firm-1's Source Code specifically) do not appear to contain any of Firm-1's proprietary information. Nor does the expert's attached resume. Accordingly, these sections of the expert report are not appropriately sealed. The remainder of Exhibit D, which discusses in detail the Source Code, shall remain sealed.

## CONCLUSION

The Defendant's motion to unseal exhibits is **GRANTED IN PART** and **DENIED IN PART**. The Government shall file on the docket redacted versions of Exhibits A and D. The Clerk of Court is directed to terminate ECF No. 117.

SO ORDERED.

Dated: June 29, 2026
　　　New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

6