# Inner City Press

August 12, 2026

By E-mail to Chambers

Hon. Jeannette A. Vargas, United States District Judge
Southern District of New York, 500 Pearl Street, New York, NY 10007

Re: Press Opposition to Sealing of Courtroom including for Daubert Hearing, Dkt 151, etc., in USA v. Ho, 1:25-cr-3 (JAV)

Dear Judge Vargas:

   Inner City Press has been covering the above captioned case including today's motion by the Government seeking to seal the courtroom for Daubert hearings and during the trial. This is immediate Press opposition.

The Government is correct that Waller v. Georgia, 467 U.S. 39, 43 (1984), supplies the governing four-factor test, and correct that it bears the burden on each factor. But its own motion does not satisfy that test, for several reasons.

First, the proposed procedure improperly delegates Waller's fourth requirement — that the court "make findings adequate to support the closure" — to the parties themselves. Under the Government's proposal, "the proponent of the evidence will inform the Court" that a Sensitive Evidence Period is beginning, the jury and public will be excused, and the courtroom will later be reopened when the proponent says the period has ended. No provision requires the Court to make a contemporaneous, specific finding as to why that particular testimony, at that particular moment, requires closure.

**Nor does it provide the Press and public with any opportunity to be heard on the closure(s). The right of public access cannot be delegated to or assumed from the defense; hence this filing in opposition to closure and sealing.**

Waller does not permit the parties to draw the curtain on their own say-so, subject to after-the-fact judicial ratification; it requires the trial court itself to determine, in the moment, that closure of that specific testimony is warranted. A blanket advance authorization covering an undefined number of future, party-designated "Sensitive Evidence Periods," spanning a multi-day Daubert hearing and an entire trial, is not the individualized judicial gatekeeping Waller contemplates.

Inner City Press: In-house SDNY: Room 480, 500 Pearl Street, NY NY 10007
E-mail: Matthew.Lee@innercitypress.com - Tel: 718-716-3540
Regular Mail: Dag Hammarskjold Center, Box 20047, New York, NY 10017

**Second, the Government's own description of the anticipated testimony shows that closure is broader than necessary.** Much of what the Government describes, from Ms. Loewenstine's testimony regarding "striking similarities in form and function," to Dr. Johnson's testimony about "novel, non-standard, and valuable code and distinctive integration features," is testimony about the characteristics and comparative attributes of code, not verbatim recitation of the code itself.

The Government's motion does not distinguish between testimony that would require reciting Firm-1's actual source code in open court and testimony that merely discusses, at a functional or comparative level, what that code does. Only the former plausibly risks the harm the Government identifies — that "any individuals attending the Court proceeding would be able to learn confidential details about Firm-1's trade secrets and use that information for their own purposes." A member of the public who hears a witness testify that two code files share "striking similarities in form and function" gains no ability to reconstruct or exploit Firm-1's proprietary code; that risk arises, if at all, only where the verbatim content is displayed or read into the record.

**Third, sealing of exhibits and transcripts — which the Government claims is "necessary" and will occur "regardless" — substantially addresses the risk the Government identifies, undercutting the case for the additional, more severe remedy of excluding the public from the courtroom itself.** If the exhibits containing the actual code, and the transcript reciting it, will be sealed either way, the incremental protective value of also physically excluding spectators from a room where a witness is verbally discussing the code's characteristics is considerably smaller than the Government's motion suggests, particularly measured against the loss to the public's contemporaneous right to observe.

**Fourth, the Government has not shown that reasonable alternatives short of full closure were considered, as Waller's third factor requires.** Among the alternatives the Government's motion does not address: requiring witnesses to refer to code components by the generic labels already used in the public portions of this litigation (e.g., "Atoms" or "Nodes," as referenced in the publicly filed Headlands Tech civil complaint) rather than closing the courtroom entirely during any discussion of code function; limiting closure to the specific, identifiable moments where verbatim code would actually be displayed or read aloud, rather than to entire, broadly defined "Sensitive Evidence Periods"; or providing an overflow room with a delayed or filtered feed. The Government's citation to United States v. Aleynikov, 2010 WL 5158125 (S.D.N.Y. Dec. 14, 2010), is also worth noting for what happened next: the underlying conviction in that case was later reversed by

2

the Second Circuit, 676 F.3d 71 (2d Cir. 2012), a reminder that EEA prosecutions of this kind warrant particular care in how liability is established, including transparently. United States v. Zhang, 590 F. App'x 663 (9th Cir. 2014), is a formally unpublished, out-of-circuit disposition entitled to limited weight here.

**Fifth, the Daubert hearing itself goes to the heart of this case, not a peripheral matter, which heightens rather than diminishes the public's interest in observing it.** Whether Firm-1's code constitutes a trade secret at all is a central, disputed element of the Government's case; the Daubert hearing determining what expert testimony the jury will hear on that question is not a collateral proceeding, and the public's interest in observing how that threshold, case-defining dispute is resolved is substantial.

Finally, the Government's proposal to review sealed transcripts and propose unsealing within a week does not cure the harm of real-time exclusion. Contemporaneous public and press access to testimony — including the ability to observe witness demeanor and report on proceedings as they occur — is a distinct value from eventual paper access to a transcript, and the loss of the former is not remedied by a promise of the latter.

For these reasons, Inner City Press respectfully requests that the Court deny the Government's motion, or, in the alternative, require the Government to identify with specificity, testimony by testimony, which discrete portions actually require verbatim code disclosure as opposed to general discussion of code characteristics, and to make individualized findings on the record before any closure, rather than adopting the blanket procedure proposed.

Separately, Inner City Press notes that the Government's motion itself cites several docket entries — including Dkt. Nos. 97, 99, 101, 110, and 123 — without indicating whether they remain sealed or were filed publicly. To the extent any of these entries, which the Government's own motion relies upon and quotes from in support of courtroom closure, remain sealed or restricted, Inner City Press respectfully requests that the Court unseal them as well, on the same Waller grounds set forth above: material a party affirmatively cites to a court in support of a request for relief is a judicial document subject to the presumption of access, and the Government has not made the particularized showing required to overcome that presumption as to any of these specific filings.

Please docket this emailed request, as you did in *Dixon v. Reid*, 1:23-cv-09878 (JAV) - a PDF is attached for ease of docketing - and act on it as soon as possible.

3

Respectfully submitted,

/s/

Matthew Russell Lee, Inner City Press

cc: ni.qian@usdoj.gov, daniel.merzel@skadden.com