UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v- | : | 25-CR-00003 (JAV) |
| CHEUK FUNG RICHARD HO, | : | OPINION AND ORDER |
| Defendant. | : | |

JEANNETTE A. VARGAS, United States District Judge:

On May 18, 2026, a grand jury returned a superseding indictment against Cheuk Fung Richard Ho (the "Defendant"), charging him with one count of theft and attempted theft of trade secrets in violation of the Economic Espionage Act ("EEA"), 18 U.S.C. § 1832(a)(1)-(a)(4) and 2, and one count of wire fraud, in violation of 18 U.S.C. § 1343 and 2. ECF No. 103 ("Indictment" or "Ind."), ¶ 28, 30.

The Defendant now moves for bill of particulars specifically describing the trade secrets he is alleged to have stolen. ECF No. 124. For the reasons that follow, the motion for a bill of particulars is **DENIED.**

## BACKGROUND

### A. The Indictment

The Indictment charges that, from in or about July 2019 to in or about August 2021, the Defendant worked as a research developer and quantitative trader at Firm-1, a global quantitative trading firm, which trades in equities and other securities on exchanges based on the execution of computer code. Ind., ¶¶ 1. Quantitative trading firms compete based on the quality of their research and

technology, which are embodied in the computer code that they use to execute automated trading decisions. *Id.*, ¶¶ 6, 7.

The Indictment sets forth how Firm-1 spent years and over a billion dollars developing its Source Code, *id.*, ¶ 8, which is the foundation of Firm-1's competitive advantage in the market, *id.*, ¶ 10. Firm-1 has taken a number of measures to protect the confidentiality of its Source Code. *Id.* The building block of Firm-1's Source Code is its library of "Atoms," which is code that has specific functions, ranging from computational functions to price-predicting computations. *Id.*, ¶ 9. Each Atom is given a name, which is often unique. *Id.* Combinations of Atoms are used to build Alphas, which are formulas that make price predictions based on real-time market data. *Id.*

Firm-1 also required the Defendant to sign a Non-Compete Agreement. *Id.*, ¶ 12. By executing the Non-Compete Agreement, Defendant "expressly acknowledge[d] the vital importance of Confidential Information in the business of [Firm-1] and agree[d] that all Confidential Information provided to [the Defendant] and developed by [the Defendant] is the sole and exclusive property of [Firm-1], is provided to and held by [the Defendant] in trust; [Firm-1] makes reasonable efforts to keep it confidential; and it has value to [Firm-I]." *Id.*, ¶ 12(b). The Non-Compete Agreement defined "Confidential Information" to include, among other things, information that Firm-1 "deems to be proprietary" or "that is not generally disclosed" or "generally known" to the public, such as, among other things, "trading

strategies," "research," "computer programs," "methods," "processes," "proprietary trading systems and models," "algorithms," and "trade secrets." *Id.*, ¶ 12(a).

Mr. Ho agreed to "not use Confidential information for [HO's] personal benefit" or "the benefit of third parties" or to "compete" with Firm-1, and he acknowledged that these obligations "will continue at least for so long as any item of Confidential Information remains confidential" to Firm-1, "including after the termination of [his] relationship with [Firm-1]" and that "such restrictions may require [Mr. Ho] to limit [his] activities for employers other than [Firm 1] . . . or in connection with other business endeavors following the termination of [his] relationship with [Firm-I] for any reason." *Id.*, ¶ 12(b). In the Non-Compete Agreement, he further agreed to "not copy or remove Confidential Information from [Firm-1's] offices, except as is necessary in connection with [his] employment or engagement with" Firm-1. *Id.*, ¶ 12(c). And the Defendant agreed to "not disclose Confidential Information to others, except to members and employees of [Firm-1] . . . who have a need to know such information and who are bound by similar confidentiality agreements" with Firm-1. *Id.*, ¶ 12(d).

The Non-Compete Agreement further provided that, during his period of employment with Firm-1, Mr. Ho would not "engage, directly or indirectly" in any competitive activity with any business that competes with Firm-1, *id.*, ¶ 12(g); that Mr. Ho would not solicit, for a period of 18 months, any employee of Firm-1 to leave Firm-1 and work for HO, *id.*; and that Mr. Ho would "promptly notify [Firm-1] at any time that [he] contemplate[s] terminating or decide[s] to terminate employment

with [Firm-1] or contemplate[s] entering or enter[s] into competition with [Firm-1] (whether or not such action would constitute a violation of [the Non-Compete Agreement], as [Firm-1] may decide at such time to limit, suspend, or terminate [his] employment and/or access to [Firm-1's] Confidential Information," *id.*, ¶ 12(h).

According to the Indictment, in July 2021, the Defendant resigned from Firm-1. *Id.*, ¶ 19. Notwithstanding the Non-Compete Agreement, the Defendant had incorporated his own quantitative trading firm two months prior ("Firm-2"), *id.*, ¶ 15. The Indictment alleges that, in order to develop source code for his new firm, the Defendant copied components of Firm-1's Source Code. *Id.*, ¶ 22. The Indictment defines this misappropriated code as the "Stolen Trade Secrets." *Id.* The Indictment describes the "Stolen Trade Secrets" as "portions of Firm-1's Source Code (including Firm-1's Atoms and Alphas), which were predominately written in the C++ and Java programming languages, and which [the Defendant] translated into the C++ and Python coding languages while preserving the structure, logic, trading insights, and functionality of Firm-1's Source Code." *Id.*

The Indictment alleges that Mr. Ho in or about December 2020, while still employed at Firm-1, began discussions with Firm-3 about entering into an arrangement whereby Mr. Ho would operate a trading team using Firm-3's capital, resources, and infrastructure. *Id.* ¶ 14. "Firm-3 ultimately agreed to purchase a minority ownership stake in Firm-2, to pay certain of Firm-2's expenses, including compensation for Firm-2's employees, and to provide Firm-2 with access to trading capital and certain of Firm-3's trading infrastructure and other resources." *Id.* The

defendant and Firm-3 executed three separate agreements governing the ownership and operation of Firm 2. *Id.,* ¶ 16. As part of these agreements, Firm-2 granted Firm-3 an exclusive license to use Firm-2's proprietary algorithmic trading software, including its source code. *Id.,* ¶ 17(b).

The Indictment alleges that during the negotiations with Firm-3, Mr. Ho misrepresented to Firm-3 that he, along with his future employees, intended to build everything, including Firm-2's Software, from scratch, and that he and his employees would be in compliance with any applicable non-compete provisions. *Id.*, ¶ 14.

The Indictment states that in one of those agreements, the Service Agreement, Mr. Ho represented that Firm-2 owned the intellectual property rights to its proprietary algorithmic trading software, including its source code; that this trading software did not infringe on any "patent, copyright, trade secret or other proprietary rights of any third party;"[1] and that "no third party has any such intellectual property rights" to Firm-2's proprietary algorithmic trading software. *Id.*, ¶ 17(c). The Indictment charges that these representations were false. *Id.*, ¶ 3.

Count Two of the Indictment charges that the Defendant "engaged in a scheme to defraud a quantitative trading firm, Firm-3, of money and property through false pretenses and by making materially false and misleading

[1] The Government has confirmed that it is not alleging that Defendant infringed on any patent or copyright. ECF No. 131 at 5 n.3.

representations about the development, ownership, and proprietary nature of Firm-2's Software." *Id.*, ¶ 30.

**DISCUSSION**

In his motion, the Defendant asks for a bill of particulars that specifies "each of the 'false and misleading representations' and 'false and fraudulent pretenses, representations, and promises' as charged in Count Two, including, most importantly, what property rights, competitive activity, or other facts are alleged to have rendered each one false or misleading." ECF No. 125 ("Mem."), at 2-3.

The Second Circuit has explained:

> Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is not a discovery device." *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010). Rather, "a bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (cleaned up). Where the information sought by a defendant is provided through discovery, however, no bill of particulars is required. *United States v. Nunez*, No. 22-CR-293 (JPO), 2025 WL 547805, at *2 (S.D.N.Y. Feb. 19, 2025); *see also Chen*, 378 F.3d at 163 ("[A] bill of particulars is not necessary where the government has

made sufficient disclosures concerning its evidence and witnesses by other means." (citation omitted)); *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) ("A district court judge . . . has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form." (cleaned up)). "Whether to grant a bill of particulars is generally a decision entrusted to the sound discretion of the district court." *United States v. Ramirez*, 609 F.3d 495, 502 (2d Cir. 2010).

The Indictment adequately informs the Defendant of the nature of the charges against him. It specifies the false or misleading representations that are at issue, including by quoting from the Service Agreement. In particular, the Indictment charges that the Defendant misrepresented to Firm-3 that (1) Mr. Ho, along with his future employees, intended to build Firm-2's Software from scratch; (2) he and his employees would be in compliance with any applicable non-compete provisions; (3) Firm-2 owned the intellectual property rights to its proprietary algorithmic trading software, including its source code; (4) the trading software did not infringe on any trade secret or other proprietary rights of any third party; and (5) no third party has intellectual property rights to Firm-2's proprietary algorithmic trading software.

The Indictment also explains in detail why these representations were false. In particular, it charges that Mr. Ho stole portions of Firm-1's Source Code to develop the trading software for his new firm. *See* Ind., ¶¶ 20, 22-23. The Indictment also alleges conduct by the Defendant that would violate the Non-

Compete Agreement, including the copying and sharing with others the Source Code, using the Source Code for the benefit of third parties or to compete with Firm-1, starting his own competing firm while still being employed by Firm-1, soliciting Firm-1 employees to work at Firm-2, and failing to notify Firm-1 of his decision to leave his employment with Firm-1. In these circumstances, a bill of particulars is not "necessary to enable [the Defendant] to prepare his defense and to avoid unfair surprise at trial." *Mandell*, 710 F. Supp. at, 385.

**CONCLUSION**

The motion for a bill of particulars as to Count One of the Superseding Indictment is DENIED. The Clerk of Court is directed to terminate ECF No. 124.

SO ORDERED.

Dated: August 25, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge