UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

CHEUK FUNG RICHARD HO,

Defendant.

25-CR-00003 (JAV)

MEMORANDUM OPINION AND ORDER

JEANNETTE A. VARGAS, United States District Judge:

On August 25, 2026, the Government moved for an order applying the crime-fraud exception to Defendant's communications with a particular attorney ("Attorney-1"), arguing that the attorney-client and work-product privileges do not shield those communications from disclosure. ECF No. 172 ("Motion" or "Mot.") at 1, 4. Specifically, the Government argues that the crime-fraud exception applies to 44 text messages exchanged between Defendant and Attorney-1 from September 21, 2022, through May 10, 2023, and 191 emails exchanged between Defendant and Attorney-1 from August 31, 2022, through May 10, 2023 (collectively, the "Subject Communications"). *Id.* at 1. For the following reasons, the Motion is **GRANTED**.

**DISCUSSION**

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (citation omitted). Separately, the work-product privilege "protects work product of the lawyer by prohibiting unwarranted inquiries into the files and the mental impressions of an attorney, whether in civil litigation, or in criminal litigation." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992) (cleaned up). There is no dispute

that at least one of these two privileges applies to the Subject Communications. *Compare* Mot. at 2, *with* ECF No. 177 at 1.

Nonetheless, the "crime-fraud exception strips the privilege from attorney-client communications that were made in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127, 141 (2d Cir. 2025) (cleaned up). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (citations omitted).

To invoke the exception, a party must demonstrate that there is "probable cause (1) that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud and (2) to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th at 141-42 (cleaned up). "Stated differently, this standard requires that a prudent person would have a reasonable basis to [(1)] suspect the perpetration or attempted perpetration of a crime or fraud, and [(2)] that the communications were in furtherance thereof." *Id.* at 142 (cleaned up). As to the second element, "[a] communication is in furtherance of a crime if [it] is 'intended . . . to facilitate or [to] conceal . . . criminal activity.'" *United States v. Castillero*, No. 23-CR-00622 (JMF), 2025 WL 2959463, at *9 (S.D.N.Y. Oct. 20, 2025) (quoting *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986)). Such intent "can be shown by evidence of some activity following the improper consultation, on the part of either the client or the lawyer, to advance the intended crime or fraud." *In re Grand Jury Investigation*, 445 F.3d 266, 279 (3d Cir. 2006) (citation

omitted).

Further, the exception applies even where the attorney is "not . . . aware that his advice is sought in furtherance of . . . an improper purpose." *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th at 142 (cleaned up). "The fact that an innocent explanation may be consistent with the facts alleged also does not negate probable cause." *Id.* (cleaned up).

"Once there is a showing of a factual basis, the decision whether to engage in an *in camera* review of the evidence lies in the discretion of the district court." *United States v. Tucker*, 254 F. Supp. 3d 620, 625 (S.D.N.Y. 2017) (quoting *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997)). "Often, *in camera* review is favored when there has been only a 'minimum showing' about whether the communications were in furtherance of a crime or fraud." *Id.* (citing *Jacobs*, 117 F.3d at 87-88). But where a party "has comfortably made a showing of probable cause that [the] communications . . . were in furtherance of a crime or fraud[,] . . . *in camera* review is unnecessary." *Id.*

Here, the Government has plainly established probable cause that Defendant committed a crime or fraud. "An indictment issued by a grand jury supports a finding of probable cause that a crime or fraud has been committed." *United States v. Costanzo*, No. 22-CR-00281 (JPO), 2024 WL 2046053, at *3 (S.D.N.Y. May 8, 2024); *see also Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (holding that a grand jury's return of an indictment "conclusively determines the existence of probable cause"). On January 6, 2025, a grand jury returned the Sealed Indictment against Defendant, charging him with one count of theft and attempted theft of trade secrets in violation of 18 U.S.C. § 1832(a)(1)-(4) and 2. ECF No. 3, ¶ 24. On May 18, 2026, a grand jury returned the Superseding Indictment, which added a second count of wire fraud in violation of 18

U.S.C. §§ 1343 and 2. ECF No. 103, ¶ 30.[1] Accordingly, the first requirement has been met.

The Government has also demonstrated probable cause that the Subject Communications were in furtherance of Defendant's alleged theft of trade secrets. *See* Mot. at 9-22. Specifically, the Government has presented sufficient evidence to find probable cause that Defendant deliberately provided false and misleading information to Attorney-1—leading Attorney-1 to repeat these misrepresentations—in an attempt to conceal the alleged crime. *See id.*

On February 9, 2023, for example, Firm-1 sent a letter to Defendant about Firm-2, inquiring about potential violations of his non-compete agreement with Firm-1. *Id.*, Ex. A. Attorney-1's written response contained several false statements, each readily disprovable, including *inter alia*: (1) "Mr. Ho did not provide any services to any entity other than [Firm-1] during his employment"; (2) "[a]fter Mr. Ho's employment with [Firm-1] ended, Mr. Ho entered into an agreement with [Firm-3] and began developing software and related services [for Firm-3] solely for use by [Firm-3's] subsidiaries in mainland China in September 2021"; and (3) "[n]either Mr. Ho nor [Firm-2] engaged in any business transactions whatsoever during Mr. Ho's employment with [Firm-1]." *Id.*, Ex. B. With respect to the first and third statements, there is evidence that, while employed by Firm-1, Defendant negotiated an investment deal on behalf of Firm-2 with Firm-3, *id.*, Exs. C, D, E; Defendant recruited employees to Firm-2, *id.*, Ex. G; Defendant contracted with a human resources vendor for Firm-2, *id.*, Ex. I; Defendant signed an agreement granting Firm-2 a license to use occupy and use certain office spaces, *id.*, Ex. J; and Defendant signed an employment agreement with an engineer to work at Firm-2, *id.*, Ex. K.

---

[1] As relevant here, the Superseding Indictment alleges that, in the spring of 2021, Defendant unlawfully stole components of his former employer's ("Firm-1") Source Code—parts of which constitute the alleged "Stolen Trade Secrets"—for incorporation into his own firm's ("Firm-2") source code as part of its quantitative trading business. ECF No. 103, ¶¶ 1-2.

Concerning the second statement, there is evidence that Firm-3 was allowed to use the software that Defendant developed for Firm-3, pursuant to the service agreement between Firm-2 and Firm-3, in "global financial markets as determined by [Firm-3] in its sole discretion." *Id.*, Ex. N.

Additionally, Defendant and Attorney-1 subsequently met with executives from Firm-1 in May 2023 to discuss the concerns highlighted in the February 2023 letters and the Government has presented evidence indicating that Defendant made several false statements at the meeting. *See generally id.*, Ex. Q. For instance, there is evidence that Defendant represented that the only action he had taken with respect to Firm-2 as of May 2021 was to reserve its name online, *id.*, yet much of the evidence indicates that Defendant took additional actions on behalf of Firm-2 between February and May 2021. *Id.*, Exs. C, D, E, G, I. There is also evidence that Defendant represented that, per the service agreement between Firm-2 and Firm-3, that Firm-3 could only use the relevant software in mainland China markets. *Id.*, Ex. Q. Yet, as previously noted, the service agreement explicitly recognizes that Firm-3 can use the software in "global financial markets as determined by [Firm-3] in its sole discretion." *Id.*, Ex. N. The Government also points to evidence that Defendant and Attorney-1 made several other false statements at the May 2023 meeting related to Firm-2 that were readily contradicted by Defendant's previous communications, contracts, and actions. *Id.* at 12-17; *see id.*, Exs. G, I, K, N, R, S, T, V.

Considering the consistent and repeated misrepresentations that both Attorney-1 and Defendant have made regarding Defendant's work in connection with Firm-2, the Government has presented evidence that supports a reasonable inference that Defendant intended to conceal the alleged trade secret theft. This conclusion is reinforced by the evidence that, in response to Firm-1's July 26, 2022 inquiry about Defendant's employment status, Defendant entirely omitted any reference to the existence of Firm-2, despite its obvious relevance. *Id.*, Ex. X.

Although Defendant does not challenge any particular item of evidence submitted by the Government, he opposes the Motion on two grounds. First, Defendant argues that the crime-fraud exception is inapplicable because it "applies only when the client has engaged the services of a lawyer in furtherance of *future* illegal conduct, meaning that past or completed crimes or frauds do not trigger the exception." ECF No. 177 at 2 (cleaned up). Since Defendant left Firm-1 in July 2021, and Defendant retained Attorney-1 in or about September 2022, Defendant contends that "[a]nything he allegedly stole was by then, as alleged, already stolen." *Id.*

This argument is unavailing. The Superseding Indictment alleges that Defendant violated 18 U.S.C. § 1832(a)(3), which provides:

> Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly . . . receives, buys, or *possesses* such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization . . . .

18 U.S.C. § 1832(a)(3) (emphasis added). "[P]ossessory offenses have long been described as 'continuing offenses' that are not complete upon receipt of the prohibited item." *United States v. Chung*, 633 F. Supp. 2d 1134, 1146 n.12 (C.D. Cal. 2009) (quoting *United States v. Krstic*, 558 F.3d 1010, 1017 (9th Cir. 2009)). Defendant's alleged crime under 18 U.S.C. § 1832(a)(3) is therefore continuing, and not past or completed, so long as, *inter alia*, Defendant possessed the stolen trade secret. *Cf. id.* at 1146 & n.12 (holding that a violation of 18 U.S.C. § 1831(a)(3) is a continuing offense). Defendant does not argue that he no longer possessed the alleged stolen trade secret when he retained Attorney-1 during the relevant times. *See generally* ECF No. 177. Accordingly, Defendant's argument fails.

Second, Defendant argues that the evidence that the Government presents does not

constitute the kind of "black-and-white false statements by counsel that gave rise to reasonable inferences as to the defendant's intent" in other cases. *Id.* at 4. The Court disagrees. As already discussed, for example, Attorney-1's representations that the agreement between Defendant and Firm-3 pertained only to the use of software and related services "in mainland China" and that Defendant "did not engage in any business transactions whatsoever during [his] employment with [Firm-1]," Mot., Ex. B, are "black-and-white false statements" considering the contract Defendant signed, *id.*, Ex. N, and Defendant's prior actions, *id.*, Exs. C, D, E, G, I, J, K. Nor does Defendant contest the falsity of these statements, or any other statements, specifically. *See generally* ECF No. 177. The Court thus concludes that there is probable cause that the Subject Communications were in furtherance of Defendant's alleged theft of trade secrets.

Having found that probable cause exists that a crime or fraud occurred and the Subject Communications were in furtherance of that crime or fraud, the Court concludes that *in camera* review of the documents is unnecessary. *See, e.g.*, *United States v. Güven*, No. 25-CR-00592 (LAK), 2026 WL 575355, at *6-8 (S.D.N.Y. Mar. 2, 2026); *Tucker*, 254 F. Supp. at 625 (concluding that *in camera* review was unnecessary due to showing that entire category of attorney-client communications were in furtherance of crime or fraud).

**CONCLUSION**

Accordingly, the Motion is **GRANTED**. The Subject Communications should be produced to the Government by September 2, 2026. The Clerk of Court is directed to terminate ECF No. 172.

SO ORDERED.

Dated: September 1, 2026
New York, New York

Jeannette Vargas

JEANNETTE A. VARGAS
United States District Judge