**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 8, 2026

**BY ECF AND EMAIL**
The Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *United States v. Cheuk Fung Richard Ho*, S1 25 Cr. 3 (JAV)**

Dear Judge Vargas,

The Government respectfully writes in the above-captioned matter regarding the defendant's September 7, 2026 supplemental disclosure for his purported expert Mark Hendricks.

Less than 18 hours before the final pretrial conference, the Government received a supplemental disclosure from the defendant with respect to his proposed expert Mark Hendricks (the "Supplemental Disclosure," enclosed under seal as Exhibit A). The Government can describe in greater detail in further briefing the deficiencies in this Supplemental Disclosure and why it fails to provide an adequate basis for permitting him to testify at all. We write now to bring to the Court's attention a deficiency that leaps off the page and that should be the basis for an immediate ruling that Hendricks may not testify based on, or refer in his testimony to, his purported industry experience, directly or through his students, given his total failure to disclose the companies at which he claims to have obtained that experience and what that experience consisted of.

For virtually every Firm-1 file, the Supplemental Disclosure includes some variation of the following language: "In Prof. Hendricks's experience, the logic and functionality of these files and their components are readily ascertainable and in part exist at other firms, and the implementation reflects common ways of thinking about these concepts generally." (*See, e.g.*, Ex. A at 1, *passim*).[1] But the Supplemental Disclosure fails to explain how the logic, functionality, and components are "readily ascertainable," how Hendricks supposedly knows these "in part exist at other firms" or

[1] The defendant's global generic reliance on Hendricks's purported experience for additional propositions similarly results in no disclosure at all. *See also* Ex. A at n.2 ("[t]hroughout this disclosure, references to 'other firms' encompass Prof. Hendricks's exposure to code of quantitative-trading firms through his experience."); *id*. at n.3 ("Across all similarities between the Headlands files and the Government-paired ORS files addressed in this disclosure, Prof. Hendricks's opinion, based on his previously disclosed experience, is that the similarities do not reflect novelty.").

which "part" exists at other firms, or how he supposedly knows these reflect "common ways of thinking about these concepts generally." For only seven files does he cite a specific source at all. And those occasional citations to a source in which the general concept at issue is discussed does not suffice as adequate disclosure for those opinions. The reference to these sources does not explain the particular way in which the concept has been implemented at Firm-1 can be ascertained or the basis for the broad claim that that particular implementation is a "common way of thinking about these concepts generally." And he fails completely to explain what "part" of the logic, functionality, and components allegedly exists at other firms or how he knows that that "part," whatever it may be, exists at other firms other than through his "previously disclosed experience." But of course, Hendricks's supposed "experience" was *never* "previously disclosed" and remains totally opaque. The failure to disclose the basis for an opinion, which prevents testing that basis, precludes the presentation of that opinion to the jury.

Hendricks cannot be permitted to propound his opinions on key issues in this case to the jury while incanting his mantra that in his unexplained "experience" the code at issue is "readily ascertainable," "variously taught in curriculum and exist at other firms," or otherwise "common." This is categorically impermissible *ipse dixit* of a supposed expert. These statements provide no material change from Hendricks's initial disclosures, which this Court has already found to violate Rule 16. (Dkt. 192).[2] Indeed, Hendricks not only continues to omit any discussion of his relevant experience, methodology, sources, bases, or reasons, but he has also used the existence of supposed non-disclosure agreements to refuse to answer even basic questions about that experience, or his methodology, sources, bases, and reasons.[3] Such testimony attempts to end-run this Court's gatekeeping function and abjectly fails to meet the requirements of Rules 16(b) and 702. And to the extent that Hendricks is claiming that he cannot disclose his relevant industry experience because of purportedly confidentiality obligations, he must be precluded from relying on that experience at all. *See Brainchild Surgical Devices, LLC v. CPA Glob., Ltd.*, 144 F.4th 238, 256-57 (4th Cir. 2025) ("[D]istrict courts have routinely prevented an expert from hiding the bases for an opinion behind a shroud of confidentiality."); *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 471-72 (S.D.N.Y. 2016) (precluding expert in products liability case where she

---

[2] *See also* Tr. of Daubert Hearing at 233 (remarking that the Court needed to know "what comprehensively [Hendricks] is opining as to each of the file" and that if "he's going to testify that he's seen code files at other firms, he needs to identify what those code files are," and that "if he's not identifying [his opinions] and he hasn't disclosed [his opinions], he's not testifying about it at trial."; *see also id.* at 233-34 ("he can't just say vaguely somewhere in some files I've seen, you know, some code, I can't tell you which files . . . He needs to tell us what is his opinion. This code, I saw this in a textbook, here's the textbook. This code, I saw this in a prior work experience. What are his opinions? What are his opinions?").

[3] *See* Tr. of Daubert Hearing at 225 ("Q. Can you name a single one? A. Given nondisclosure agreements, I'm not sure I can."; "Q. So, you cannot provide me with a single firm? A. Given – yes. Given the nondisclosure agreements, I do not think I can provide a name or list of names of firms;" "Q. Can you name any firms that you've done any consulting work for at all? A. No. Not to my knowledge."; *see also id.* at 261 ("Q. Can you name a single…firm that you have worked with in the Project Lab where you have reviewed their in-production trading code? A. No.")

would "not fully disclose many facts underlying her personal participation"); *In re Rail Freight Surcharge Antitrust Litig.*, Misc. No. 07-0489 (PLJ/JMF), 2013 WL 12384733, at *2 (D.D.C. Nov. 12, 2013) (offering party a choice between (i) providing detailed information for all purportedly confidential information that expert made reference to in his report, (ii) producing a new report that makes no reference to information that is not disclosed due to confidentiality, or (iii) disqualification of the expert).

In short, the Supplemental Disclosure continues to obfuscate the basis for Hendricks's purported opinions. It also often obscures what those opinions even are. Rather than identify the basis for his sweeping generalizations, the defendant's *fourth* supposed attempt to meet critical Rule 16 disclosure obligations does no such thing. Instead, time and again, the latest purported supplemental notice relies on nothing more than Hendricks's *ipse dixit* that Firm-2's code is "common," which he claims more than 60 times, and "exist[s] at other firms," which he claims more than 40 times.

Thus, the Supplemental Disclosure does exactly what the Court told the defendant the Federal Rules do not permit. *See* Tr. of Daubert Hearing at 234 (The Court: "His opinion can't be somewhere in a source code I saw something"; "I could have seen it in a textbook, it could be open source, I could have seen it through my work experience, but I'm not going to tell you where and I'm not going to tell you what, that's not a sufficiently detailed disclosure"); *see also Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.").

On this record, the Court can neither conclude that any of Hendricks' testimony based on his supposed industry experience will constitute "testimony [that] is the product of reliable principles and methods" nor whether the "opinion reflects a reliable application of the principles and methods." Fed R. Evid. 702. *See United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021); *United States v. Mahaffy*, No. 05 Cr. 613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (same).

This fundamental fault, which the defendant has yet again failed to correct—and this time, only days from trial—renders Hendricks's proffered testimony "grossly unfair" to the Government, *see* Tr. of Daubert Hearing at 239, misleading and unhelpful to the jury, and contrary to the interests of justice. It would, if permitted, put before the jury testimony, cloaked as the opinion of an "expert," that is wrong, comprised of untested and untestable information, conclusory, and that is virtually immune to cross-examination. After failing multiple times to do what the law requires, the logical conclusion is that there is no valid basis behind nearly all of Hendricks's opinions relying on his self-proclaimed industry experience. The appropriate remedy at this late stage is to preclude them, in full.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: s/___________________________
Ni Qian
Brandon Thompson
Matthew Weinberg
Assistant United States Attorneys
(212) 637-2364/2444/2386

Enclosure

cc: (by ECF and Email)

Counsel of Record