**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 9, 2026

**BY ECF AND EMAIL**
The Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *United States v. Cheuk Fung Richard Ho*,**
**S1 25 Cr. 3 (JAV)**

Dear Judge Vargas:

The Government respectfully submits this letter in the above-captioned matter in further support of its motion to preclude the testimony of proffered defense expert Mark Hendricks, as directed by the Court at the conference held on September 8, 2026. For the reasons set forth by the Government in its prior submissions, Dkts. 101, 114, 169, 178, 196, and following Hendricks's testimony at the *Daubert* hearing (the "Daubert Hearing"), Hendricks's *ipse dixit* opinions about the stolen trade secrets at issue in this case based on his undisclosed "experience" must be precluded in their entirety. The defendant's September 7, 2026 supplemental disclosure (the "Supplemental Disclosure")[1] continues to fail to meet the critical requirements of both Rule 16(b) of the Federal Rules of Criminal Procedure ("Rule 16") and the defendant's burden for the introduction of proposed expert testimony pursuant to Rule 702 of the Federal Rules of Evidence ("Rule 702"). Simply put, the Court cannot perform its gatekeeping function without this information. Nor can the Government perform its function as an advocate in our adversary system. The defendant's refusal to fully disclose Hendricks's opinions and their bases and reasons, and the nature of the proffered testimony, also causes that proposed testimony to violate Rule 403 of the Federal Rules of Evidence ("Rule 403"), because any limited probative value of such untested and untestable opinions (and assertions of fact) is substantially outweighed by the risks of misleading the jury, confusing the issues, and unfair prejudice.

For 33 of the 41 collections of opinions in the defendant's most recent disclosure, the disclosure relies on Hendricks's "experience" without any further citation. (Ex. A, ¶¶ 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, 36, 38, 39, 40, and pp. 16-24). But Rule 16(b) requires "complete" disclosure of the "bases and reasons" for a proposed expert's opinions. Citation to a witness's "experience" does not satisfy that requirement, especially, where, as here, the witness refuses to identify where he obtained most of the alleged "experience" on which he relies, when he did so, and what that "experience"

[1] The Supplemental Disclosure is attached as Exhibit A and submitted under seal.

comprised. Binding case law is crystal clear that the Court may not "admit opinion evidence that is connected to [the facts] only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also, e.g., United States v. Menendez*, No. 23 Cr. 490 (SHS), 2025 WL 547794, at *5 (S.D.N.Y. Feb. 19, 2025) (precluding proffered expert testimony that was "simply her 'ipse dixit' conclusions based on her experiences throughout her career" and rejecting her "experience and research" as a basis for her opinions).

Rule 16(b)(1)(C) also requires disclosure of a proposed expert's "qualifications," another test that is failed when the "experience" that purportedly qualifies the witness is hidden or described at such a high level of generality as to be meaningless. Because Hendricks purports to be qualified based on his "experience" but refuses to disclose where and how he gained that "experience," or what it consisted of other than in the most general terms, the disclosure of his qualifications is utterly deficient. Moreover, the defendant must show that a proposed expert's testimony "is based on sufficient facts or data," Rule 702(b), a standard that is plainly not met when the witness refuses to provide any detailed account of the facts or data on which he relied. Nor has the defendant met his burden of showing that the proposed testimony is "the product of reliable principles and methods" reliably applied to the facts of this case, Rule 702(c), (d), when he will not disclose any details about how the testimony was derived.

Indeed, the defendant's refusal to disclose the supposed industry experience upon which Hendricks allegedly relies for his specific opinions in this case, on the grounds that such disclosure is allegedly prohibited by nondisclosure agreements ("NDAs"), warrants preclusion in and of itself. This is true even assuming *arguendo* that the alleged agreement covers that information – an alleged fact on which the defendant also asks this Court simply to assume. *See Branchild Surgical Devices, LLC v. CPA Glob., Ltd.*, 144 F.4th 238, 256-57 (4th Cir. 2025) (collecting cases). Confidentiality agreements, just like privilege or work product or any similar protection, cannot be used as both a sword and a shield. Nor does Rule 16(b) contain any exception whatsoever for information purportedly covered by an NDA.

But these are hardly the only deficiencies in the defendant's most recent disclosure. Not even close.

The Supplemental Disclosure refers to, but generally makes no effort to identify, supposed curricula, textbooks, other firms, and/or open source information in describing his opinions. For example, Hendricks claims more than 30 times that concepts or techniques are taught "in curriculum." (Ex. A ¶¶ 1, 2, 5, 8, 10, 12, 15, 17, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 34, 35, 36, 38, 39, 40). An unspecified "curriculum" or other purported source of information does not provide the "bases and reasons" for Hendricks' opinions required by Rule 16. And even Hendricks's few citations in the Supplemental Disclosure provide no real disclosure at all. For example, Hendricks twice cites "Introduction to Algorithms," *see* Ex. A, n.1, 5. But that book is well over a thousand pages long. Hendricks provides no hint as to what portion of this textbook he claims supports his view. Similarly, does not specify what portion or portions of the few collections of code files to which he cites he is referring, even though some of those collections contain hundreds or scores of computer files. Thus, even where he provides citations Hendricks does not appropriately identify the "bases and reasons" for his opinions. The whole point of Rule

16(b) is that the Government should not have to guess at how, if at all, an expert reached his conclusions.

The Supplemental Disclosure also does not specify, for which components of each identified code file, has Hendricks supposedly concluded that the logic and functionality of the file and its components are, variously, "readily ascertainable," "exist at other firms," are "open source," and/or "reflect[] common ways of thinking about these concepts generally," and therefore has not provided a "complete statement of all opinions." Furthermore, the Supplemental Disclosure repeatedly claims that features of a code file exist "in part" at other firms, without specifying *which part* or *what part* of the whole he claims that part is, *see* Ex. A ¶¶ 1, 6, 8, 10, 11, 13, 16, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 36, 39, 40 at pp. 22, 23. Thus, here too Hendricks has failed to provide a "complete statement of" such opinions or provide the "bases" for such opinions, and has not shown that his testimony is based on sufficient facts or data, or that it is the product of reliable principles and methods reliably applied. Leaving the Court and the Government to guess which "part[s]" of the relevant features he claims exist elsewhere fails each of the required legal tests – tests on which the defendant bears the burden. *See, e.g., United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Moreover, this proposed testimony, to the extent discernable, should be also excluded on Rule 403 grounds. Plainly, a part of information that constitutes a trade secret, particularly when talking about math and/or computer code, almost always exists "in part" elsewhere. The jury should not be misled into thinking that the mere existence of some part of a computer code elsewhere means that the code as a whole is not a trade secret.

Similarly, the Supplemental Disclosure states that "similarities between the [Firm-1] file and the Government-paired ORS file are variously consistent" with, variably, terminology, function, and/or statistics – language used in connection with virtually all of the proffered opinions – and "choices that are arbitrary and economically insignificant in an HFT [*i.e.*, high frequency trading] context" – language (in whole or in part) used in connection with all but approximately ten opinions. (Ex. A ¶¶ 1, 2, 3, 4, 5, 6, 8, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 31, 32, 33, 34, 35, 36, 38, 39, 40). But the disclosure does not articulate how those similarities are consistent with these matters and/or how the choices are arbitrary and economically insignificant in an HFT context, and therefore has not provided a "complete statement of all opinions," much less a methodology that can be tested. In sum, time and again, the Supplemental Disclosure is so conclusory, so vague, and so devoid of details that it does no come close to meeting the defendant's burden.

Lastly, to the extent the Supplemental Disclosure simultaneously claims that the witness is aware of facts that are supposedly inconsistent with he Government's theory of guilt and expected proof, but refuses to disclose those facts, whether due to alleged confidentiality or any other reason, the proposed testimony also violates Rule 403. The defendant cannot use the guise of expert testimony to transmit unverified and untestable statements of alleged fact–namely, that the trade secret information at issue in this case in fact exists elsewhere–without disclosure of those very items he intends to use in his case-in-chief. This is a separate, but complementary violation to the one described above regarding the failure to disclose experience. Together, the defendant's failures present extreme risk of unfair prejudice to the Government and confusion by the jury. The

Federal Rules of Criminal Procedure and Federal Rules of Evidence exist for good reason, and the defendant's compounded, repeated, and abject failures to comply with them should not be countenanced.

In sum, absent full compliance with Rule 16(b)(1)(C)'s disclosure requirements to provide a "complete statement of all opinions," "the bases and reasons for them," and the witness's qualifications, it is impossible for the Court to exercise its gatekeeping function under Rule 702, impossible for the Government adequately to test and meet Hendricks's opinions, and impossible for the defendant to meet his burden to demonstrate the admissibility of this testimony. The defendant has proffered no legitimate basis for his repeated failure to make these disclosures and no reason why more time will supposedly cure his failures. To the contrary, the defendant has intimated that Hendricks has no specific citations to offer but rather is drawing on his general recollections and understandings. (Tr. of September 8, 2026 Conf. at 338 ("Mr. Merzel: …And so it doesn't tick and tie to a particular firm because in the course of developing his opinions, he was not looking at another firm's code in front of him and making the determination that this matches that.")). Now, for numerous reasons, after three written disclosures and failed testimony at the Daubert Hearing, Hendricks's unsupported and undisclosed opinions should be precluded.

## I. Prior to September 7, 2026, the Defendant Failed on At Least Four Other Occasions to Comply with the Requirements of Rule 16(b)(1)(C)

### a. <u>The March 2026 Disclosure and Daubert Motion</u>

The Court ordered the defendant to provide an expert disclosure pursuant to Rule 16(b)(1)(C) by March 23, 2026. (Dkts. 66, 87). On March 23, 2026, the defendant provided a seven-page letter that contained little more than broad, nonspecific assertions of Hendricks's alleged opinions about high frequency trading generally, his review of code files for Firm-1 and Firm-2 generally, and sweeping and unsupported claims that unspecified "logic, trading insights, and functionality" of the code files were known to or readily ascertainable to others through proper means (the "March Disclosure"). On March 27, 2026, the Government sought additional information regarding Hendricks's opinions via letter to the defendant. The defendant responded on April 3 and largely did not answer the Government's questions.

Left with no real clarity on the actual content of Hendricks's actual opinions, or the bases or reasons for these opinions, the Government moved on May 7, 2026 to preclude Hendricks's testimony for failure to provide sufficient notice, among other things. (Dkts. 101, 114).

On July 15, 2026, the Court ordered a *Daubert* hearing to examine whether Hendricks's testimony was admissible. During a July 21, 2026, pretrial conference, the Court expressed its own concern that Hendricks's disclosure did not adequately set forth a complete statement of his opinions and their bases and reasons. (Tr. of July 21, 2026 Conf. at 26 ("some of those are the deficiencies that I was questioning myself when I read the papers.").) But rather than ordering the defendant to provide a supplemental disclosure at that time, the Court made clear that it intended for the *Daubert* hearing to provide a substitute. (*Id.* at 26-27 ("That is exactly what a Daubert is,

so that we can resolve those issues prior to the trial, and [the Government] will have that information, and the Court can perform its gatekeeping function.").

b. The August 2026 Disclosure

Shortly before the Daubert Hearing, on August 21, 2026, the defendant provided a second, supplemental disclosure (the "August Disclosure"). The Government thereafter submitted a letter explaining that the August Disclosure "mirrors the considerable deficiencies reflected in the" March Disclosure (Dkt. 169), and the defendant responded by citing the Court's statement that the Daubert Hearing would cure any notice deficiency. (Dkt. 174 at 3-4 ("The Government's argument that the content of the supplemental disclosure is inadequate under Rule 16 simply rehashes arguments that the parties have already briefed and which the Court decided to resolve via *Daubert* hearing.")).

c. The Daubert Hearing

Hendricks testified at the Daubert Hearing on September 3, 2026, but did not provide an adequate basis for his opinions. Indeed, he barely provided any basis at all. During direct examination, Hendricks provided broad claims about his professional qualifications and alleged industry experience, refused to provide details about his supposed professional experience – claiming that virtually all of the information, even names of firms, was blocked by non-disclosure agreements, and offered no support or explanation for the opinions included in either the March Disclosure or the August Disclosure. On cross examination, Hendricks was unable to identify even a single trading firm or textbook upon which he based his purported opinion that he had seen the "logic, trading insights, and functionality" of the files, nor was he able to explain whether the opinion was specific only to components of the file, or the entire file, for any of the dozens of files at issue.

The Court properly and clearly recognized Hendricks's failures to provide bases for his opinions (much less complete bases, which could be tested), and remarked that the Court needed to know "what comprehensively [Hendricks] is opining as to each of the files" and that if "he's going to testify that he's seen code files at other firms, he needs to identify what those code files are," and that "if he's not identifying [his opinions] and he hasn't disclosed [his opinions], he's not testifying about it at trial." (Tr. of Daubert Hearing at 233; *see also id.* at 233-34 ("he can't just say vaguely somewhere in some files I've seen, you know, some code, I can't tell you which files . . . He needs to tell us what is his opinion. This code, I saw this in a textbook, here's the textbook. This code, I saw this in a prior work experience. What are his opinions? What are his opinions?")).

The Court agreed to conclude the Daubert Hearing to provide the defendant with a fourth opportunity to comply with Rule 16. In a September 4 order, the Court explained that the defendant's disclosures to date violated Rule 16. (Dkt. 192). Specifically, the Court held that "having found the disclosure deficient under Rule 16(b)(1)(C), the Court ordered that Defendant serve a revised disclosure sufficiently setting forth a complete statement of all opinions Professor

Hendrick[s] will offer at trial, and the bases and reasons for them by Monday, September 7, 2026, at 4:00 p.m." (*Id.*)

## II. The Supplemental Disclosure

Two days ago, on the afternoon of Monday, September 7, 2026 – more than five months after the original Court-ordered deadline for the defendant's Rule 16(b)(1)(C) disclosure, and one week before the then-scheduled start of trial – the defendant produced the Supplemental Disclosure. This time, the defendant purported to list Hendricks's opinions under headings labeled with the name of each file, and included high-level descriptions of some functions performed by those files. But once again, the defendant provided virtually no basis or reasons for the sweeping opinions he proposed to place before the jury, names no firm at which Hendricks had allegedly seen any of this code or when and how he allegedly did so. From the outset of the disclosure, the defendant instead globally claimed:

- "Throughout this disclosure, references to 'other firms' encompass Prof. Hendricks's exposure to code of quantitative-trading firms through his experience."

- "Across all similarities between the [Firm-1] files and the Government-paired ORS files addressed in this disclosure, Prof. Hendricks's opinion, based on his previously disclosed experience, is that the similarities do not reflect novelty."

The Supplemental Disclosure then repeats Hendricks's central alleged opinions in virtually the same terms as his prior, deeply deficient disclosures, claiming that based on his supposed "experience," the "logic and functionality of this file and its components are readily ascertainable and in part exist at other firms," and/or the "implementation reflects common ways of thinking about these concepts generally."

These opinions are entirely untestable and utterly fail to comply with Rule 16(b)(1)(C) and the Court's explicit instruction at the Daubert Hearing on September 3.

## III. The Supplemental Disclosure Fails to Comply with Rule 16 and Meet the Defendant's Burden Pursuant to Rule 702

### a. <u>The Supplemental Disclosure Does Not Provide the Bases, Reasons, Methodology, Facts or Data for Each Opinion</u>

As the Government's September 8, 2026 letter explained, (*see* Dkt. 196), Hendricks's repeated reliance again on his alleged "experience" working at "other firms" cannot form sufficient bases and reasons for the opinions he seeks to give in this case, where he discloses only that "reference to 'other firms' encompass Prof. Hendricks's exposure to code of quantitative-trading firms through his experience." (Ex. A n.2). This alone warrants preclusion.

Rule 702(b) also requires that the defendant show his expert's proposed testimony is based on sufficient facts or data. If Hendricks will not disclose *where* he worked, *what* he worked on

(with specificity), or *when* he did this work, the defendant has not met his burden of showing that his opinion is based on accurate and sufficient facts or data. It is impossible for the Government or the Court to know if his testimony is based on sufficient facts or data when we do not know what the testimony is based on and cannot test how he concluded, for example, that a particular kind of code is "common." The defendant has also failed to demonstrate that the testimony he proposes to put before the jury is the product of reliable principles and methods reliably applied, as also required by Rule 702. He has not shown that his claim that code is "common" is reliable when it is based on asserted unspecified work at unspecified number of firms at unspecified times and for unspecified periods of time. In short, he does not appear to be relying on a reliable principle or method, but instead on a vague, purported memory that cannot be tested, or even effectively cross-examined.[2]

In all but seven instances, the Supplemental Disclosure makes no effort to identify the textbooks, "curricula," "other firms," and/or open source information where the logic and functionality of the relevant components can be found, and therefore does not provide the "bases and reasons" for each opinion. (*See, e.g.*, Ex. A at 16 (covering Hendricks's discussion of 63 of the 78 Atoms). As the Government explained in its September 8 letter, this is utterly insufficient: as the Court itself indicated at the Daubert Hearing, Hendricks must support his opinions by identifying *where* he saw what he claims he saw. *See* Tr. of Daubert Hearing at 234 (The Court: "His opinion can't be somewhere in a source code I saw something"…"I could have seen it in a textbook, it could be open source, I could have seen it through my work experience, but I'm not going to tell you where and I'm not going to tell you what, that's not a sufficiently detailed disclosure"); *see also Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006) ("An expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion.").

Even in the seven places where Hendricks includes a footnote with a supposed source, those sources are so broad as to be meaningless. For example, Hendricks repeatedly cites to the entirety of a 1,300-page textbook. (Ex. A, n.1, n. 5 (pointing to "*Introduction to Algorithims*, MIT Press, 3rd ed. (2009)" without a pincite).) Hendricks also cites to four open source code libraries without pincites—these libraries range from at least 89 source code files to over one thousand code files. (Ex. A, n. 4, 6). Sending the Government and the Court to go fishing in such a voluminous sea is akin to no disclosure at all. As a result, even in the handful of instances where Hendricks purports to provide a source, those citations are meaningless window-dressing. Such opinions, bases, and reasons do not comply with Rule 16 and should be precluded.

---

[2] Moreover, the factual determination that the jury must make is whether these Firm-1 Files and Atoms were trade secrets when the defendant took them in 2021 *and* whether they remained trade secrets through January 2025—if Hendricks cannot provide *when* he saw a file then his testimony is unhelpful, confusing, and potentially misleading to the jury and likely irrelevant.

b. The Supplemental Disclosure Does Not Provide a Complete Statement of All Opinions

The Supplemental Disclosure continues to fail to comply with Rule 16 because it fails to provide the required "complete statement" of all of Hendricks's opinions. In sum, the defendant continues to rely on generalities and vague language, concealing his true opinion, in violation of Rule 16. *See, e.g.*, *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *3 (S.D.N.Y. Feb. 25, 2011) ("[T]he purpose of reciprocal expert disclosures is 'to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (quoting Fed. R. Crim. P. 16 Advisory Committee's Note)).

First, for virtually all of the code files, Hendricks does not explain whether he is referring to the entirety of a code file or only unspecified "parts." For example, he states generically that the "logic, trading insights, and functionality of *the file and its components* are readily ascertainable and exist at other firms" or "exist *in part* at other firms" (emphasis added). In the context of the facts of this case, identifying a common mathematical or statistical concept used in a file does not address the nature of the trade secret information at issue in this case, which is substantially based on the particular ways in which those concepts are applied by Firm-1. Therefore, to evaluate and meet Hendricks's testimony, it is necessary to understand *what* exactly Hendricks is saying is readily ascertainable and may exist elsewhere.

Compounding this failure, for the vast majority of the files, Hendricks disclosed that he saw only a "part" of some unspecified logic, trading insight and functionality at firms, but failed to disclose even what part. (Ex. A ¶¶ 1, 6, 8, 10, 11, 13, 16, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 36, 39, 40 at pp. 22, 23). Given that Hendricks's proposed testimony is that the unspecified logic, trading insight, and functionality of these files are "readily ascertainable," not generally known, and that Hendricks saw only *part* of it, then Hendricks must also explain *which* part and *how* the unspecified logic, trading insight and functionality is readily ascertainable.

Second, for the vast majority of his opinions, Hendricks disclosed only that "similarities between the [Firm-1] file and the Government-paired [Firm-2] file are variously consistent with terminology and function" and "choices that are arbitrary and economically insignificant in a high frequency trading context." (Ex. A ¶¶ 1, 2, 3, 4, 5, 6, 8, 10, 11, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27, 31, 32, 33, 34, 35, 36, 38, 39, 40). Again, the Government is left to guess which similarities are "consistent with terminology and function" and which similarities are "arbitrary" and/or "economically insignificant." For some of the files, Hendricks added parentheticals such as "as described above" or "e.g., names." These parentheticals do not cure this problem particularly when the "above" is similarly lacking in details. Once more, if Hendricks's opinion is limited to the use of "names," then he must say so.[3] But it is impossible to discern this from Hendricks's present disclosure, which purports to make far more sweeping and undisclosed conclusions.

[3] Hendricks also fails to disclose what he means or the basis for doing so when he makes blanket claims that unspecified choices were "arbitrary" or "economically insignificant."

Third, for the vast majority of his opinions, Hendricks claims that "the implementation reflects common ways of thinking about these concepts generally." (Ex. A ¶¶ 1, 2, 4, 6, 8, 10, 11, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 39, 40, pp. 22, 23). As Hendricks has claimed in court, the Firm-1 files he reviewed are "on average . . . somewhere around 100 lines," and some files were even bigger. (Tr. 246.) The Court and the Government should not be left to guess whether he claims that *every single way* that the Firm-1 files implement a particular concept "reflects common ways of thinking" or if Hendricks is referring to only some unidentified part of Firm-1's implementation.

Fourth, for approximately 16 opinions, Hendricks asserts that the relevant Firm-1 code file "contains values that would be subject to adjustment when tailoring for any particular symbol or market." (Ex A. ¶¶ 6, 8, 11, 18, 19, 22, 24, 26, 28, 29, 30, 32, 33, 34, 35, 40). Hendricks, however, does not explain which values he is referring to nor how the values would be adjusted. Without this information, the Government cannot test the reliability of those opinions nor can the Government meet this evidence through either cross-examination or rebuttal testimony—the Government would be left to speculate which value or values Hendricks is referring to for these files.

Hendricks's disclosure with respect to the 78 Atoms fares no better. Other than the prefatory language regarding the Atom framework, Hendricks discloses only that the Atoms "are variously taught in curriculum and exist at other firms, *as described below*." (Ex. A at 16 (emphasis added)). But for 63 of the 78 Atoms, Hendricks says nothing about whether he claims they are taught in curriculum or exist at other firms (whereas he does specifically claims that five Atoms are "standard in curriculum," two Atoms exist at other firms, and one exists at other firms and is standard in curriculum). Moreover, as for the 54 files described above, Hendricks must also make clear that what he claims is taught in curriculum or exists at other firms is his description of that Atom's function and no more. If he is saying more—*i.e.*, he saw this particular implementation of this concept—then he must also say that in order for this disclosure to satisfy the obligation that he disclose his "complete opinions." Once again, the Government is left guessing.

At bottom, by describing his opinions about the Firm-1 files and Atoms at such a high level of generality, Hendricks is saying little more than that a cake recipe is "readily ascertainable" because it involves the use of flour, butter, and eggs. If this is the complete opinion, the defendant – who bears the burden – should say so. Hendricks leave vague whether he is talking about code files in whole or in part, which parts he intends to address, which similarities or differences he means, and more. For example, at paragraph 17 of the Supplemental Disclosure, Hendricks notes that the files "implement certain exponential moving statistics, including exponential moving averages and exponential decay," which he calls "common," and once again cites his experience to claim that "in part" the information "exists at other firms" and his view that some aspect of this is "readily ascertainable." But he does not state whether his opinion is limited to the use of these concepts generally, or whether he will address the particular way the Firm-1 file uses exponential moving averages and exponential decays to manipulate market data for trading insight. If it is the latter, the Government is entitled to know what he intends to say about that in order to receive the "complete opinion" Rule 16 requires, and in order to test that evidence under Rule 702 and meet

that evidence. Now, the Government is left to guess at the scope of Hendricks's incomplete opinion. Rule 16 demands more than the incantation of the same broad opinion stated nearly verbatim over and over again that provides no actual information to the Government or to the Court as to the content of Hendricks's actual opinions.

c. The Proposed Testimony Violates Rule 403

Allowing the defendant to put such *ipse dixit* testimony before the jury about a central issue in the case – that is, the proprietary and novel nature of the stolen information – would also violate Rule 403. Because "[e]xpert evidence can be both powerful and quite misleading [due to] the difficulty in evaluating it," a court, "in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 595 (1993); *see Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (explaining that Rule 403 has a "uniquely important role . . . in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberation"). The defendant in essence seeks to present a supposed expert to proclaim that the information at issue cannot be a trade secret because – on his say-so – he has seen it or unidentified parts of it in undisclosed "firms," unspecified "curricula," and opines it is "common" as a result of his supposed industry "experience" (for which he will make no specific disclosures and refuses to answer questions). In other words, the defendant is trying to have a witness qualified as an "expert" to then provide incredibly significant and highly prejudicial *fact* testimony – all without disclosing the information itself or the items actually containing this supposed information referenced by his own witness. This is fundamentally unfair and misleading. (Tr. of September 8 Conf. at 341 ("He is making a statement that this exists at other firms. If anything, that's almost not an opinion. It's a factual statement that he is saying, I have seen this in other codes out there in the industry….[He's] saying, I've seen it, I worked with these codes…. But you're not allowing the bases for that testimony to be challenged in any way…it's certainly a 403 issue in my mind. That's highly prejudicial…"). The Government and the jury would be left with no way to assess these claims because the witness himself will not explain them. Indeed, an opinion that does not address the specifics of what "part" of the code at issue it is even discussing is highly likely to confuse and mislead the jury, and outweigh any probative value. The extraordinary prejudice of such testimony is "grossly unfair," (Tr. of Daubert Hearing at 239), and plainly outweighs whatever probative value it could have. The testimony should therefore also be precluded pursuant to Rule 403

## IV. The Defendant's Proposal to Cure These Multiple Issues Is Insufficient

a. Hendricks Cannot Rely on Experience That He Refuses to Disclose Due to Confidentiality

As the Government raised in its September 8 letter, the defendant cannot have it both ways: he cannot rely on Hendricks's supposed industry experience to support his opinions that he has supposedly seen the "logic, trading insights, and functionality" of certain components of Firm-1's code files if he will not disclose that industry experience due to supposed confidentiality obligations. It is axiomatic that Hendricks may not use his prior experience as both a sword with which to advance his opinions, and yet shield them from the Court and the Government's scrutiny.

That is utterly incompatible with the fundamental premise of Rule 16(b) and the adversary system. And as the Government explained in its September 8 letter, "district courts have routinely prevented an expert from hiding the bases for an opinion behind a shroud of confidentiality." *Brainchild Surgical Devices, LLC v. CPA Glob., Ltd.*, 144 F.4th 238, 256-57 (4th Cir. 2025)); *see also In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 471-72 (S.D.N.Y. 2016); *In re Rail Freight Surcharge Antitrust Litig.*, 2013 WL 12384733, at *2 (D.D.C. Nov. 12, 2013).[4]

Hendricks's testimony at the Daubert Hearing is instructive of why it would be prejudicial to allow him to testify about his industry experience without affording the Government with sufficient information necessary to test this experience. Initially, Hendricks stated, among other things, that he had seen the "source code" for approximately 30 to 40 firms to tout his qualifications, and left the distinct impression that, in a "majority of cases," he was reviewing the code used by those firms "for quantitative trading." (Tr. of Daubert Hearing at 195). When the Government specifically asked about one firm, however, that the Government had been able to ascertain through sources *other than the defendant* had hired Hendricks as a consultant,[5] the Government was able to establish that, far from "advising on technologies and models relevant to quant finance" for that firm, as Hendricks originally testified, *see id.* at 268, the "extent" of his work at the firm actually involved "various workshops and lectures and sessions…on a range of quantitative topics for a range of groups." *Id.* at 271. In reality, Hendricks has not reviewed the firm's proprietary source code, and is utterly unqualified to opine on how that firm's code compares to Firm-1's or any other quantitative trading firm. In other words, when the Government was able to identify a firm where Hendricks claimed to have worked – again, through its own investigation, and not based on any disclosure by the defendant, as Rule 16 requires – it turned out that Hendricks's experience there did *not* provide a basis for his purported opinions.

[4] What the defendant seeks would undermine the truth-seeking function of trial. Indeed, in other contexts, courts have stricken direct testimony when a witness declined to answer questions that may have undermined their testimony on direct. *See United States v. Frank*, 520 F.2d 1287, 1292 (2d Cir. 1975) ("Rather, by virtue of Allen's refusing to answer (for whatever reason) proper, relevant questions on cross-examination going directly to the heart of his testimony on direct examination, the direct testimony became hearsay, since not subject to cross-examination, and was therefore properly struck."); *see also United States v. Baker*, 166 F. App'x 566, 568 (2d Cir. 2006) ("Where a defendant refuses to" answer questions that could "discredit [their] story [and are] directly relevant . . . a district court may strike all of the direct examination that relates to matters about which the defendant refuses to testify to on cross examination."); Federal Practice & Procedure: Evidence § 6164 (2d ed. Apr. 2026 Update) ("Rule 611(a) gives courts the power to strike direct examination testimony where a witness is nonresponsive on cross-examination.).

[5] The Government learned this through Hendricks's statements in the *NRD* litigation, which the defense refused to produce to the Government. Again, the Government notes that alleged confidentiality was apparently not a bar to Hendricks referencing his work at this firm in the *NRD* litigation, but he did not provide the same information to the Government until the Government specifically asked.

Hendricks's claim that he cannot reveal even the identities of the other firms he worked at impermissibly precludes the Government from being able to conduct further investigation necessary to test those opinions.[6] That means the Court cannot fulfill its gatekeeping function and Hendricks is left to offer rank *ipse dixit*. Such purported expert testimony is wholly improper, highly prejudicial, and must be precluded before it risks misleading the jury into thinking that a supposed expert knows the answer to critical issues in the case – with no ability to test his accuracy.[7]

b. <u>A List of Firms, Without More, Does Not Allow the Government or the Court to Test the Bases for His Opinions and Meet this Evidence – Indeed, It Will Result in Even Greater Unfair Prejudice</u>

As explained above, the Government and the Court need to know not only where Hendricks has *consulted*, but where, when, and how he has seen the components of Hendricks code files "at other firms." The defendant's proposal that it simply produce a list of firm names where Hendricks has supposedly performed undisclosed work at undisclosed times does not comply with Rule 16 and does not cure the defendant's failures to demonstrate and disclose his qualifications or the bases and reasons for his opinions in this case. That is obvious because here, his opinion repeatedly claims, for virtually every single code file reviewed by Hendricks, that the computer code central to this case "exists at other firms," is "common," and is "readily ascertainable and known to others in the industry." A general list of firm names does not resolve these deficiencies.

Indeed, producing a list of firms but no additional information – particularly if coupled with some sort of restriction on the Government's ability to independently vet the disclosure – will result in even greater prejudice to the Government, and even more untestable, *ipse dixit* testimony from Hendricks. If Hendricks is permitted to testify, without further elaboration or disclosure, (i) that he has seen code at 30-40 firms, (ii) touting the importance of the firms he lists, and (iii) claiming that unspecified components of the logic, trading insights, and functionality of the Firm-1 code is observable at some unspecified number of those "other firms," he will have provided

[6] The Government notes that while Hendricks claimed to be unable to identify any firms where he has worked due to confidentiality obligations, when explicitly asked about two specific firms, Hendricks did answer in the affirmative. If Hendricks was truly bound by confidentiality, it is unclear why he would have been able to respond in the affirmative to the Government's questions – and/or why he was able to disclose his role consulting for the two firms at issue in his expert report in *NRD GP et al. v. Centiva Capital*, 1:24-cv-07245 (SDNY), but not in this case.

[7] Surely, it would be material to the Court's assessment of the reliability of Hendricks's methodology if Hendricks is basing his opinion that some aspect of the code is common or known or readily ascertainable because he saw it one time at one firm whose files Hendricks gained access to pursuant to an NDA. To the extent Hendricks bases his opinion that Firm-1's code is "common," "known," or "readily ascertainable" on information that his clients themselves consider proprietary or trade secret and use NDAs to carefully protect, the existence of the NDA materially undermines the reliability of his opinions and should be considered in any Rule 702 analysis of his methodology.

incredibly prejudicial *ipse dixit* testimony that the Government has no reasonable opportunity to challenge or otherwise meet. This is entirely improper.

c. There is No Basis to Restrict the Government's Lawful Investigation

The defendant's proposal that the Court restrict the Government's ability to investigate Hendricks's experience is extraordinary, unacceptable, and lawless. In order for the Government and the Court to test the bases for Hendricks's opinions, and for the Government to be able to adequately meet this evidence during cross-examination and otherwise, the Government is entitled to conduct an investigation of Hendricks's claimed experience. The defendant's request that the Government not contact any firm identified by Hendricks has no basis in law. It is a fundamental part of the adversarial system that a party – here, the Government – need not rely on the say-so provided by a witness (here, the defendant's proffered expert) about his relevant experience and background. The Government is entitled to conduct its own investigation about this experience, and the facts and qualifications upon which Hendricks supposedly relies to form his opinions. *See generally Williams v. Florida*, 399 U.S. 78, 82 (1970) (the "search for truth" is enhanced by "both the defendant and the State [having] ample opportunity to investigate certain facts crucial to the determination of guilt or innocence"); *Wardius v. Oregon*, 412 U.S. 470, 473 (1973) (the "ends of justice" are served through pretrial disclosure that "gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial"). Indeed, as noted above, cross-examination at the Daubert Hearing has already revealed that Hendricks's experience at the firms at which he "consults" may not be as extensive as he suggests. (*See* Tr. of September 8, 2026 Conference at 347 ("Mr. Weinberg: …Frankly, the one time that we were able to really get under the hood and understand what he saw was because we had identified the experience that he had. That was not provided to us by the defendant and was not in his disclosure. The Court: I recall that.").

In short, the Government is aware of no legal basis to prohibit it from approaching witnesses and seeking relevant information – just as the defense is free to do itself.[8] The defendant's demand that such restrictions be placed on the Government as a condition of the defendant making his own required disclosures is untenable, contrary to law, and cannot properly be ordered by the Court.

d. The Court Should Preclude Hendricks's Testimony

The failures reflected in Hendricks's Supplemental Disclosure clearly warrant preclusion in its entirety. The defense has not provided a complete statement of Hendricks's opinions, they have hidden the bases and reasons for his opinions (including by using non-disclosure agreements to prevent any disclosure or even questioning of those specific bases and reasons), and they have failed to show that his opinions are "based on sufficient facts and data," "the product of reliable principles and methods," and "reflect[] a reliable application of the principles and methods to the

[8] The defendant's claim that he faces such restrictions because he "can't call the NSA" and "can't call these other places" is inaccurate. (Tr. of September 8 Conf. at 378). There is no prohibition on defense counsel contacting or calling anyone.

facts of the case," as Rule 16 and Rule 702 expressly require. Those failures raise serious questions about the scope of Hendricks's opinions, the competency of Hendricks's supposed opinions, whether any facts, data, bases, and reasons even exist to support Hendricks's supposed opinions, and whether his proffered testimony reflects any reliable principles, methods, and applications to the facts of this case. These rampant failures offer no basis for the Court to believe that at this late date, continued seriatim disclosures from the defendant can carry their burden to demonstrate that Hendricks's opinions about the code at issue should be admitted pursuant to Rule 702.

## V. Conclusion

For the reasons discussed herein, Hendricks's testimony should be precluded pursuant to Federal Rule of Criminal Procedure 16, Federal Rule of Evidence 702, and Federal Rule of Evidence 403.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: s/__________________________
Ni Qian
Brandon Thompson
Matthew Weinberg
Assistant United States Attorneys
(212) 637-2364/2444/2386