SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE MANHATTAN WEST
NEW YORK, NY 10001

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2100
DIRECT FAX
(917) 777-2100
E-MAIL ADDRESS
DAVID.MEISTER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

November 9, 2026

*Via ECF and Under Seal*

The Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: *United States v. Ho*, 25 Cr. 3 (JAV)

Dear Judge Vargas:

On behalf of Richard Ho, we respectfully submit this letter to address the relevance and admissibility of statements attributed to Mr. Ho in DX 2050, a Headlands document titled "Richard Ho," which is a compilation of executives' notes from interviews of Mr. Ho and related discussions in 2019. For the reasons discussed below and in court today, we respectfully request that the Court permit the defense to introduce the following statements in DX 2050:

1. DX 2050, at 3 (under "Jeff 4"): *Used a search process to optimize strategies that sounded very similar to ours. I guess they [i.e., Mr. Ho's firm, Tolo] had an ex Teza guy there so that makes sense. Their search algorithm sounded kind of halfway between our normal* [redacted] *and spherical* [redacted].[1]

   This note, written by Jeff Burkert (who is now co-CEO of Headlands), indicates that Mr. Ho described Tolo's "search process to optimize strategies" and told Mr. Burkert that Tolo employed "an ex Teza guy," and that Mr. Burkert's impression from the discussion was that Tolo's search process was "very similar to ours," "kind of halfway between our normal [redacted] and spherical [redacted]," and that this "makes sense" because of the "ex Teza guy." (Notably, [redacted] is one of the "Stolen Trade Secrets" alleged in the bill of particulars.)

[1] Here and below, we have redacted the name of a Headlands code file from our public filing in accordance with the Court's order defining the scope of "Confidential Information," Dkt. No. 188.

We offer this statement not to show that Mr. Ho in fact had a search process to optimize strategies, nor to show that it was in fact similar to Headlands' process, but rather for the non-hearsay purpose of showing that Mr. Ho articulated information about Tolo's code that a Headlands executive deemed similar to Headlands' code. *See* Fed. R. Evid. 801(c)(2). The fact of the statement, regardless of its truth, shows that Mr. Ho had preexisting knowledge of information that is now alleged to be a trade secret belonging to Headlands, and indeed that he shared that knowledge with Headlands in a job interview, showing that he did not believe it to be a trade secret. His state of mind in that regard is relevant to Count One, because the Government bears the burden of proving that Mr. Ho acted with the specific intent to convert a trade secret to his own economic benefit. *See* 18 U.S.C. § 1832. Moreover, his prior knowledge of the information—whether or not it was true that Tolo had implemented such a process—also bears on whether it was a trade secret. *See* 18 U.S.C. § 1839(3)(B) ("not being generally known to … another person").

2. DX 2050, at 3 (under "Jeff 4"): *He [i.e., Mr. Ho] thought the main difference between his firm and the top firms was CME data and passive capability, but that he was at parity for active China only strategies. I thought that was a little optimistic, but his approach was more sophisticated than I thought it would be.*

   We offer this statement not to show that Tolo was in fact "at parity" with top firms for liquidity-taking China-only trading strategies, but to show that Mr. Ho thought so when he was interviewing with Headlands, which bears on his purported motive and intent to steal trade secrets from Headlands. *See* Fed. R. Evid. 803(3) ("A statement of the declarant's then-existing state of mind …"); 18 U.S.C. § 1832 ("with intent to convert a trade secret … to the economic benefit of anyone other than the owner thereof").

3. DX 2050, at 3 (under "Max 4"): *I didn't catch any red flags, ... He had reasonable answers as if he really did do the low-level implementation of the alphas, private info triggers, porting over code from people he'd hired from Optiver and Teza, sampler, and fitter. ... I think he learned a lot from running his own company and could add value here.*

   This portion of Max Dama's notes reflects information that Mr. Ho provided when asked "how he built alphas." *Id.* We do not offer the statement to prove that Mr. Ho in fact "did do the low-level implementation of the alphas" and "port[ed] over code from people he'd hired." Rather, the fact that he said so to Mr. Dama in 2019, in a job interview—and that, far from admonishing him, Headlands hired him—is relevant regardless of whether his statement was true, because it bears on his state of mind at the time he made the statement and certainly thereafter, given Headlands'

reaction to it. We are not offering the statement for its truth, so it is not hearsay, *see* Fed. R. Evid. 801(c)(2), and it is relevant to the intent elements of Count One.

4. DX 2050, at 4 (under "Jerzy"): *They [i.e., Tolo] have a dependency graph architecture for their alphas that is conceptually similar to our atom tree (although with much larger nodes). A strategy uses a linear combination of ~50 signals (he used book pressure as an example) and each signal corresponds to 1–3 nodes in the total dependency graph (total graph size ~ 150 nodes).*

   This note, written by Headlands executive Jerzy Hausknecht, indicates that Mr. Ho described Tolo's "dependency graph architecture for their alphas" and told Mr. Hausknecht that Tolo's strategies used "linear combination[s] of ~ 50 signals … [with] each signal correspond[ing] to 1–3 nodes," and that Mr. Hausknecht perceived this to be "conceptually similar to our atom tree." (As the Court knows, the alleged "Stolen Trade Secrets" include Headlands' use of atoms and its infrastructure.)

   As with item 1 above, we offer this statement not to show that Mr. Ho in fact had a dependency graph architecture at Tolo involving nodes that were combined into signals, nor that Tolo's graph was in fact similar to Headlands' atom tree, but rather for the non-hearsay purpose of showing that Mr. Ho explained this concept to a Headlands executive in 2019, before joining Headlands. The fact of the statement, whether or not it was true, shows that he had prior knowledge of information that the Government alleges to be a trade secret, and that he shared that knowledge with Headlands in a job interview, clearly in the belief that it was not a trade secret, much less a secret belonging to Headlands. *See* 18 U.S.C. § 1832 ("with intent to convert a trade secret"); 18 U.S.C. § 1839(3)(B) ("not being generally known to … another person").

* * *

Accordingly, we respectfully request that the Court permit the defense to introduce the above-referenced portions of DX 2050.

Respectfully submitted,

/s/ David Meister

David Meister
Andrea Griswold
Daniel Merzel
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-2100

*Counsel for Richard Ho*