SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
ONE MANHATTAN WEST
NEW YORK, NY 10001

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2426
DIRECT FAX
(917) 777-2426
E-MAIL ADDRESS
ANDREA.GRISWOLD@SKADDEN.COM

November 12, 2026

*Via ECF*

The Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: *United States v. Ho*, 25 Cr. 3 (JAV)

Dear Judge Vargas:

On behalf of Richard Ho, we respectfully submit this letter to request that the Court preclude Headlands witness Casey Worthington from (1) offering testimony about the functionality of One R Squared ("ORS") code files, (2) testifying to any similarity between Headlands and ORS code files other than text that appears verbatim in both, and (3) using the demonstratives that the Government has labeled GX 895 and 2231 to walk the jury through ORS code.[1] By "verbatim," we mean character-by-character identical text that a juror can confirm by placing the two files side by side. Any comparison beyond that requires interpreting code rather than observing it and is therefore expert testimony barred by Rule 701(c).

We acknowledge that our prior objections to Mr. Worthington's testimony focused too heavily on *when* he formed his views, rather than *how*. Rule 701(c), however, is clear. Lay testimony cannot be based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). In assessing such testimony, courts must "focus on the reasoning process by which a witness reached his proffered opinion." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (internal quotations omitted). If an opinion "rests *in any way* upon … specialized knowledge, its admissibility must be determined

[1] We renew the objections to improper lay testimony set forth in our motions *in limine* and respectfully ask the Court for reconsideration. Factual context provided by the recently produced 3500 material and proposed Worthington demonstratives led us to revisit the relevant Second Circuit authority, which we submit compels a different result. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.").

by reference to Rule 702." *Id.* (internal quotations omitted) (emphasis added). Analysis of computer code is well beyond the capabilities of an ordinary juror, as courts, including this Court, have routinely recognized. *See* Trial Tr. 871 (Nov. 10, 2026) ("A person who is not a coder may not understand what the functionality of this code is."); *Atlantis Info. Tech., GmbH v. CA, Inc.*, No. 06 Civ. 3921 (JS-ETB), 2011 WL 4543252, at *12 (E.D.N.Y. Sept. 28, 2011) (finding that software specialist's review of source code was "patently technical") (internal quotations omitted); *Idan Computer, Ltd. v. Intelepix, LLC*, No. 09 Civ. 4849 (SJF-ARL), 2010 WL 3516167, at *3 (E.D.N.Y. Aug. 27, 2010) (finding that "the ultimate determination of whether defendant's Indigo-i software was created by reverse engineering or copying plaintiff's Oblivision software may require technical expertise in comparing the software source codes which is beyond the competency of a layperson or this Court"); *DropzoneMS, LLC v. Cockayne*, No. 16 Civ. 2348 (YY), 2019 WL 7630788, at *7 (D. Or. Sept. 12, 2019), *report and recommendation adopted*, No. 16 Civ. 2348 (YY), 2020 WL 591353 (D. Or. Feb. 6, 2020) (finding that a side-by-side comparison of two code files was inadmissible expert testimony because "ordinary people do not compare blocks or lines of source code in their everyday lives," and "without expert testimony explaining the nature of these comparisons or the soundness of the inferences to be made from them, this information is meaningless to a jury of lay persons"); *Daedalus Blue, LLC v. MicroStrategy Inc.*, No. 20 Civ. 551 (RCY), 2023 WL 5346046, at *9 (E.D. Va. Apr. 11, 2023), *report and recommendation adopted in part, rejected in part*, No. 20 Civ. 551 (RCY), 2023 WL 5337826 (E.D. Va. Aug. 18, 2023) (excluding lay testimony because "comparing software necessarily requires providing a technical opinion on whether the software is similar or not," and "such a comparison is closer to speculative opinion testimony than testimony based on the lay witness's perception and opinion," which the district court adopted).

Yet this is the kind of testimony that the Government intends to elicit. The Government has described Mr. Worthington's anticipated testimony as his "personal observations" of "similarities in functionality, variable names, function names, and overall structure" between Headlands and ORS code. Dkt. No. 165, at 5, 11 (Aug. 18, 2026). The 3500 material further elucidates that Mr. Worthington is not comparing identical text within files. Rather, he is matching different pieces of text across different programming languages by tracing their logic and concluding that the logic is the same. *See, e.g.*, 3520-021 (opining that GX 829, an ORS file, is an "obfuscated direct copy" of GX 2028, a Headlands file); 3520-040 (comparing GX 2008, a Headlands file, to GX 891, an ORS file, and opining that "x_mid corresponds to lagger price; y_mid corresponds to leader price because [he] looked at logic in both files and saw that they were used in the same way"). Those observations are not perceptions. They are conclusions Mr. Worthington reached by selecting particular lines of code from files of his choosing, translating between programming languages, matching differently written variables and functions to one another, and comparing what the Headlands code does to what he believes the ORS code does.

The Second Circuit affirmed the exclusion of this type of assessment in *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equipment Ltd.*, 716 F. App'x 5 (2d Cir. 2017). There, the CEO of a company was permitted to testify to the functioning of his *own* company's software, but not to compare it to the defendants' software. Plaintiffs argued, much like the Government here, that this testimony was based on the witness's personal investigation and thus fell under Rule 701, not Rule 702. Focusing on Rule 701(c), the district court rejected this characterization, explaining that the analysis "is nevertheless not based on reasoning processes familiar to the average person in everyday life." *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.,* No. 11 Civ. 726 (CBA), 2013 WL 4409434, at *10 (E.D.N.Y. Aug. 2, 2013), *report and recommendation adopted as modified*, No. 11 Civ. 726 (CBA-RLM), 2013 WL 5502852 (E.D.N.Y. Oct. 1, 2013), & *report and recommendation adopted*, No. 11 Civ. 726 (CBA-RLM), 2014 WL 12769275 (E.D.N.Y. Sept. 17, 2014). The Second Circuit then affirmed the exclusion of this testimony.

Whether Mr. Worthington formed his views during his 2024 review or in preparing for trial is of no moment. As the Second Circuit explained, a witness's "personal familiarity with the facts of a case" may satisfy Rule 701(a), but his testimony is nonetheless expert in nature if he "base[s] his opinions as to those facts on specialized or technical knowledge extrinsic to that personal, relevant experience—i.e. reasoning processes unfamiliar to average persons." *Dynamic Concepts*, 716 F. App'x at 11 (internal quotations omitted); *see also United States v. Leech*, No. 24 Cr. 658 (GHW), Dkt. No. 148, at 25–26 (S.D.N.Y. 2026) (precluding employee analysis of trades "in which they were not involved" because "it was expert in nature," as they "were required to apply their specialized skills and training"). Whatever knowledge of ORS code files Mr. Worthington gained when he reviewed them in 2024 may bear on Rule 701(a)—but understanding and comparing that code's functionality and other attributes to the Headlands code required him to apply his technical expertise to interpret the ORS code, whenever he did so.[2]

Nor do *Bank of China*, *Rigas*, or *Cuti* allow this to be lay testimony. The Government relies on *Bank of China*'s statement that a witness's specialized knowledge does not bar testimony "so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise." *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004). But in this context, "exclusively" addresses whether a witness's expertise, or the fact that he was chosen to investigate because of his expertise, disqualifies him. It does not license lay opinions that blend investigation with specialized reasoning, and the court

---

[2] The *CureMD* case does not change this assessment. *See 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014). There, the witnesses compared their own systems, which they knew well, against the plain language of a patent. Here, by contrast, Mr. Worthington first had to interpret the functionality of the ORS code, and then conduct a comparison against the Headlands code. He would be testifying about precisely the categories that the *CureMD* court excluded. *Id.* at 635 (permitting only lay testimony that did not bear on "any 'technical or other specialized knowledge,' such as software coding or computer systems functionality").

in *Bank of China* held that even the investigating employee's testimony was improperly admitted "to the extent … it reflected specialized knowledge he has because of his extensive experience in international banking." *Id*. at 182. *Garcia* then made the governing standard in the Second Circuit explicit. Citing *Bank of China* as consistent, the court held that a court must focus on "the reasoning processes by which a witness reached his proffered opinion," and that an opinion resting "in any way" on specialized knowledge puts one firmly in Rule 702 territory. *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). The court rejected the Government's argument that an agent's opinion was admissible because it was "reached in the course of his investigation," and held that Rule 701 bars such an opinion if the witness's "reasoning process depended, in whole or in part, on his specialized training and experience." *Id.* at 216. Put differently, if an opinion with some investigative basis were lay testimony so long as it was not rooted "exclusively" in expertise, *Garcia* would have come out the other way. *See also Dynamic Concepts*, 716 F. App'x at 11 (reading *Garcia* and *Bank of China* together). *Rigas* and *Cuti* are also consistent with this rule because, in each, the specialized question had been removed from the case.[3] *Cuti* distinguishes *Garcia* on exactly that ground: the agent there used "a specialized reasoning process not readily understandable to the average juror." *United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013). Mr. Worthington's testimony is on the *Garcia* side of that line. The premise of his comparison—that certain ORS lines of code correspond to Headlands code even where they are not verbatim—is not established by other evidence. It is the specialized conclusion itself, and unlike in *Cuti* and *Rigas*, the jurors cannot test it without the programming expertise Mr. Worthington applied.

Expounding on this improper expert testimony, the Government would now have Mr. Worthington present what amounts to a live demonstration of how the code would execute were it to be run by using hypothetical inputs. Though the Government casts this testimony as an illustration, the entirety of the exercise relies exclusively on Mr. Worthington's ability to comprehend code. Admission of such testimony as lay implicates the very concerns that prompted the adoption of Rule 701(c): that parties might subvert the strict reliability requirements of Rule 702 under the guise of lay testimony. *See* Fed. R. Evid. 701, Adv. Comm. Notes to 2000 Amend. If Mr. Worthington's testimony is admitted, the defense is left with the incredible prejudice of having a twelve-year Headlands partner who carries insider credibility presented as a lay witness and having that credibility escape *Daubert* and Rule 16 scrutiny.

---

[3] *United States v. Cuti*, 720 F.3d 453, 458 (2d Cir. 2013) (allowing testimony by accountants as to how information withheld by defendants would have affected their own accounting of the company's financials because "the applicable accounting rules were explained in detail," so "the reasoning process that the witnesses employed in answering the hypotheticals was straightforward and transparent to the jurors, who could readily discern whether the responses given were reliable"); *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir. 2007) (testimony by company employee as to "the effects of the disputed reclassifications . . . based upon his observations during his twenty months as an employee" was not based on specialized knowledge).

We do not ask the Court to revisit its rulings permitting Headlands witnesses to describe Headlands code, however technical, or to identify identical text, names, structure, and values across files. Such other testimony is distinguishable because it is more akin to fact testimony than opinion, given Mr. Worthington's personal knowledge of the Headlands code. The defense asks only that the Court apply to Mr. Worthington the line it has already drawn: a Headlands lay witness "should not be opining on what this new code does, how it is functionally similar or performs the same types of functions as the Headlands code," because "that is for [the Government's] expert witness to opine on, not for [a] lay witness." Trial Tr. at 98 (Nov. 4, 2026).

Respectfully submitted,

/s/ Andrea Griswold

Andrea Griswold
David Meister
Daniel Merzel
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Manhattan West
New York, NY 10001
(212) 735-2426

*Counsel for Richard Ho*