**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 15, 2026

**By ECF**

The Honorable Jeannette A. Vargas
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***United States v. Cheuk Fung Richard Ho*, S1 25 Cr. 3 (JAV)**

Dear Judge Vargas:

The Government respectfully writes to object to 50 new defense exhibits, DXs 2120-2169, which were disclosed to the Government for the first time late Wednesday evening, far after the deadline for the disclosure of defense exhibits. Specifically, the Government moves to preclude all 50 exhibits, which are pull requests or descriptions of the comments that the defendant and others made as they edited the One R Squared codebase, under Federal Rules of Evidence 403 and 802.

As to Rule 403, the defendant already offered, and the Court admitted, six substantially similar defense exhibits, DX 2080-2085, which the defendant "offer[ed] for the purpose of showing that [the defendant and other One R Squared employees] were working." (Tr. 738). There is also ample testimony already in the record on this front from former One R Squared employee Jiatong Zhou. (*See, e.g.*, Tr. 840-42 (describing working on One R Squared source code during a July 2021 trip); 855-56 (describing his work on the One R Squared software infrastructure, the defendant's work "coming up with . . . trading strategies" and a third engineer, Wen Jia Liu's, work on software infrastructure as well as trading research); 915-916 (same); 934 ("I think that all of us had already put in a lot of work on One R Squared over the kind of preceding two years."); 975 (testimony that Liu had already started working on a code repository in or about June 2021); 977 (describing Liu's work at One R Squared as having "made a lot of contributions to the node framework"); 981-83 (testimony that Zhou and other employees at One R Squared, as well as the defendant, worked on the One R Squared code, that Zhou and the others had "spent hours and hours working on [the One R Squared] code base")). The proposed new defense exhibits are thus highly cumulative. And even if they were not, there is no need to offer *50* such exhibits. On the contrary, they are all similar to one another.

At the same time, even apart from them being highly cumulative of both evidence already in the record, and one another, these 50 additional exhibits pose a substantial risk of confusing the issues and materially elongating the trial, because the exhibits are not self-explanatory, and contain

comments regarding very technical aspects of coding, many of which do *not* relate to any of the source code files that the Government is alleging to be Headlands' stolen trade secrets. The Government would therefore have to spend meaningful time parsing these exhibits with the jury, so as to ensure that it did not misapprehend the nature and relevance of the materials—which is far more limited than their volume suggests.

The Court should preclude the 50 new exhibits on the foregoing bases alone. But they present an additional serious concern under Rule 802, because many of the proposed new exhibits contain hearsay, specifically, statements of the defendant and others. To the extent that the defendant were to argue that he is not offering these statements for the truth of the matters asserted, that argument should be rejected. Indeed, it makes little sense on the face of the documents, given that many of the comments are the defendant's own statements regarding what he did or did not do, that is, statements of alleged current or historical fact, which are quintessential examples of inadmissible hearsay. There does not appear to be any other relevance to the statements, much less one that the lay jury could be expected reasonably to follow. *See, e.g., United States v. Gupta*, 747 F.3d 111, 132 (2d Cir. 2014) (upholding district court's preclusion of a hearsay statement proffered for the declarant's state of mind rather than for the truth of the matter asserted where there is "no way the jury can make the distinction between the belief and the substance of what was said to have been believed," and where the Government "can't cross-examine the witness in any meaningful way"); *United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) (it is "insufficient to justify [] admission [of out-of-court statement offered not for the truth asserted] if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice" such as "that it deprives the opponent of the opportunity to cross-examine the declarant"); *United States v. Kaiser*, 609 F.3d 556, 572-573 (2d Cir. 2010) ("[T]he mere identification of a relevant non-hearsay use of [the] evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice."). To the extent that the defendant is seeking to admit these exhibits for the purpose of showing that he and One R Squared employees were working, redacting the substantive content of the comments would permit that point to be made without raising this serious hearsay concern, particularly as it relates to the defendant's own out-of-court statements describing the work he said he had done when he had a contemporaneous motive to exaggerate and the statements are not otherwise relevant unless being offered for the truth of the matters asserted.

Even if the Court were otherwise inclined to admit the exhibits, or a subset thereof, the Government objects to the following categories of statements as well as specific statements detailed below. First, the Government objects on hearsay grounds to all statements made by the defendant and other One R Squared employees that purport to describe the change they are making to the code base. These types of comments typically appear throughout each of the exhibits as the first comment following the words "Merged PR [number]:" and under the section called "Description."[1] Second, the Government objects on hearsay grounds to all statements made by the

[1] While "[s]tatements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay," *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999), in these exhibits, the word "add" appears to refer to *past* actions, not instructions to take an action. And more fundamentally, that there might be a conceivable non-

defendant and other One R Squared employees that purport to describe an action that they took, such as when the defendant repeatedly commented the word "done" after suggestions by others. Moreoever, the Government specifically objects to the following statements on hearsay grounds:

1. DX 2128: comments from the defendant that he "added pyrsq/features/reset.py to represent reset types," "Need to keep this for testing for now," and "done."
2. DX 2130: the following comment from the defendant, which aims to explain why he made a particular edit: "which is better supported by pylance."
3. DX 2131: another person's description of the edit he made as "Add C++ support for printing and parsing Duration."
4. DX 2132: the defendant's description of his edit as a "Bug fix for DeepBookFeatures," which appears in multiple places.
5. DX 2133: the defendant's description of his edit as "added pyrsq/features/trade_type.py," which appears in multiple places," as well as the longer statement written by the defendant under "Description" which also purports to describe the edit he made. In addition, another person's comment from August 2, 2021 that "This inspired me to make this change . . ." and then describing the change he allegedly made in a different pull request. Various statements from the defendant that he had "done" a particular edit and that "as discussed, this is already the case in the current implementation."
6. DX 2134: another person's description of the edit he made as "Support node ordering dependencies," as well as the longer description he wrote describing the edit he made.
7. DX 2135: the defendant's description of the edit he made as "Add related vwap features," which appears in multiple places, as well as comments from the defendant describing the code, such as "actually right it is *= with volume as trigger," "can be confusing without visualizer," "but this config doesn't work because the LatestValue of that impulse will always be 1 after the first shave. I think we can still have shaving updates as an impulse node since an update is still 'instanteous,'" and also his statement that he had "done" a particular edit in various places.
8. DX 2136: the defendant's description of the edit he made as "added Deprecated-TimeDecayingAbsMax node."
9. DX 2137: the defendant's description of the edit he made as "added TradePressureFeatures"
10. DX 2138: the defendant's description of the edit he made as "Added event and time decay for impulses," as well as the longer description he wrote, and the following comments he made: "this suggestion doesn't work for some reason so I kept things are they were," "your suggestion works because threshold is used to compare with abs_volume below, but I changed this because decaying on its own change trigger is a form that's easier to debug. (I went through some extensive debugging here where I had to look at all the decayed

---

hearsay purpose for a statement is not enough for admission; rather, the defendant, as the proponent of each statement, bears the burden to demonstrate that is the purpose for he offers the statement. *See, e.g.*, *United States v. Kidd*, No. 23-6400, 2025 WL 3687811, at *1 (2d Cir. Dec. 19, 2025) ("The burden is on the proponent of the evidence to show that an exception to the rule against hearsay applies.").

values of the underlying input). Unless you have performance concerns, I think keeping this in this form may be easier," "I changed this to your suggestion," various comments denoting that a particular change was "deliberate," "This is when a reset trigger comes before an impulse trigger," "it's deliberate to start with NaN to indicate that no impulses have come in."

11. DX 2139: the defendant's description of the edit he made as "Add RelatedREturnsFeatures"
12. DX 2141: the defendant's description of the edit he made as "add related price move features."
13. DX 2142: the defendant's description of the edit he made as "add trade price features," as well as the following comments from the defendant: "as discussed, the decay is intentional," "done," "as discussed, this is intentional."
14. DX 2143: the defendant's description of the edit he made as "add related prediction features," which appears in multiple places, as well as the following statements from the defendant: "done," in various places, and "hmm, the reason I named it deLay is that it is the initial delay to update the value. After that, we recur at an exponentially increasing interval." And the following statements from another person: "Node objects are supposed to be immutable and very weird things will happen if someone mutates it after it gets added to a NodeTable, for example," and "delay doesn't capture the fact that it's recurring."
15. DX 2144: the defendant's description of the edit he made as "refactor BUILD file of feature library module to reduce redundant dependencies."
16. DX 2145: the defendant's description of the edit he made as "add bookskewdelta features."
17. 2DX 146: statements from another person describing his edit as "fix pylance type error in DurationType," as well as the longer statement from that person under Description.
18. DX 2147: the defendant's description of the edit he made as "add book pressure adhoc features," as well as the following statements from the defendant: "this was a bug. Corrected and added test case," "good spot – corrected," "good spot – actually neither needs LatestValueAtTrigger. Corrected," "Decaying UnitImpulse's value is always between 0 and 1 so I don't think abs is needed," and "This is a good point. In most situations it wouldn't matter that much since the last value should be small, but it is still undesirable. I changed the implementation slightly to make sure it decays to 0."
19. DX 2148: the defendant's description of the edit he made as "add we leader price direction features."
20. DX 2149: the defendant's description of the edit he made as "add book abs max features," as well as the following comments from the defendant: "done," and "corrected."
21. DX 2151: the defendant's description of the edit he made as "added book skew and target already moved trade volume filters," and the defendant comment that he "changed."
22. DX 2152: the defendant's description of the edit he made as "make leading_trade_volume_type a filter"

23. DX 2153: the defendant's description of the edit he made as "weighted mann whitney u test," as well as the following statements from the defendant: "similar concept to 'degrees of freedom.' If no dupes, this is the seize of the input arrays," and "oh mean to say that only difference 'is' the support for weighted samples."
24. DX 2157: the defendant's description of the edit he made as "add EMA adjustment to DeepBook features," and his comment saying "done."
25. DX 2159: Another person's description of the edit he made as "properly support extra size/quote formulas in DecayedDepth," as well as the statements he made under Description: "Allow nodes to be specified that reference TARGET_SYMBOL_PLACEHOLDER_BOOK. This is a placeholder Book node that is replaced by the actual target symbol in get_book_pressure_as_log_ratio. Also, include the node hash in the label to prevent collisions."
26. DX 2160: the defendant's description of the edit he made as "kalman filter node," as well as the defendant's statements that he had "done" the edits suggested by another person in various places.
27. DX 2161: the defendant's description of the edit he made as "added RelatedKalmanFeatures," as well as the defendant's later comment that he had "done" an edit suggested by Liu.
28. DX 2162: the defendant's description of the edit he made as "added deep book delta."
29. DX 2163: the defendant's description of the edit he made as "refactor node-library.switch_case."
30. DX 2164: the defendant's description of the edit he made as "added LeadLagMovingMean node," as well as the defendant's other comments: "added test cases," "@ Wen Jia Liu this is the node we discussed yesterday. It's still WIP. Pending the node sharing logic," and "done."
31. DX 2165: the defendant's description of the edit he made as "exponentialMovingvalue proto config."
32. DX 2166: the defendant's description of the edit he made as "added hybrid liquidity types to allow interaction between size and quotes," as well as his comment "that was a dup—removed."
33. DX 2168: the defendant's description of the edit he made as "added DecayingAbsMaxTrigger LagAndMinSeparationTrigger CombineTrigger," as well as the following statements from the defendant: "this is used for sampling for kmeans clustering. Basically the intuition is to trigger when something relatively important happens, but also naturally enforcing a level of min_separation," "When I introduced emv I intentionally passed in event_config because we're passing event_config.event_clock into build and I assumed that needed to match up with emv. I don't have a strong opinion though because I'm not sure how important this is," "ok I kept it as it is for now," and "done" in various places.

34. DX 2169: the defendant's description of the edit he made as "moe feature_lib to cookbook and refactor the //pyrsq/features BUILD" in various places.

For these reasons, the Court should preclude DXs 2120-2169, or, in the alternative, admit only a subset, and order the defendant to redact the exhibits to remove the above-described hearsay statements.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: s/______________________________
Ni Qian
Brandon C. Thompson
Matthew Weinberg
Assistant United States Attorneys
(212) 637-2364/2444/2386